[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 4, 2005
THOMAS K. KAHN
CLERK

-----------------------------------------

No. 04-12364
Non-Argument Calendar

-----------------------------------------

BIA No. A95-221-298

OSCAR IGNACIO VELEZ URIBE,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

-----------------------------------------------------------------

Petition for Review of an Order of the
Board of Immigration Appeals

-----------------------------------------------------------------

(May 4, 2005)

Before EDMONDSON, Chief Judge, BLACK and PRYOR, Circuit Judges.

PER CURIAM:

Oscar Ignacio Velez Uribe, a native and citizen of Colombia, petitions for review of the final order of the Board of Immigration Appeals (BIA), which affirmed the immigration judge's denial of asylum, denial of withholding of removal, and denial of relief under the United Nations Convention Against Torture (CAT).[1]  Removal proceedings commenced after 1 April 1997; the permanent provisions of the Immigration and Nationality Act, as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, 110 Stat. 3009 (1996), govern this petition.  We deny the petition.

Uribe filed an asylum application alleging that, in April 2000, his taxi cooperative was employed by the Liberal Party in Colombia during a presidential campaign.  While Uribe was driving his taxi, two members of the Revolutionary Armed Forces of Colombia (FARC) approached him and asked to borrow his taxi.  Uribe became afraid and left Colombia for the United States for five months.  He returned to Colombia in October 2000.  In December 2000, while driving his taxi, he was given a phone number to call: when he called he was threatened by FARC

---

[1] To the extent Uribe challenges the denial of CAT relief, he did not raise this issue before the BIA. This claim is unexhausted, and we lack jurisdiction to review it.  See 8 U.S.C. § 1252(d)(1).

and declared a "military objective and political enemy." Several days later, he claimed that while driving his taxi, he was pursued by FARC members in a white Renault, but that he was able to escape. He then left for the United States. Uribe stated that he never had participated in politics; he was paid for his services with no link to politics. He claimed that FARC, however, believed him to be a collaborator with the Liberal Party.

Uribe testified at a hearing before the IJ that he became a Liberal Party member in 1998: his duties included transporting party members and distributing party propaganda merchandise, such as shirts and keychains. He testified that he participated in party meetings and election campaigns. Uribe also testified about (1) his three encounters with FARC, (2) threats made to his wife, who has remained in Colombia, that FARC will kill him if he is found, and (3) the purported FARC vandalism of a taxi in Colombia owned by Uribe but driven by Uribe's son. The IJ rejected his claims, determining that Uribe (1) had not established past persecution or a well-founded fear of future persecution, and (2) failed to provide credible testimony or sufficient corroborating evidence showing a plausible basis for his fear of persecution in Colombia.[2]

---

[2] The BIA summarily affirmed the IJ's decision without opinion: the IJ's decision became the final removal order subject to review. See Mendoza v. U.S. Attorney Gen., 327 F.3d 1283, 1284 n.1 (11th Cir. 2003).

Uribe argues that he presented much evidence to support his asylum and withholding of removal application. He contends that the reason FARC approached him was because of his involvement with the Liberal Party. He asserts that his testimony about his encounters with FARC compels a conclusion that the threats he received were due to his political involvement. And he submits that he established a well-founded fear of persecution based on threats he received when he returned to Colombia in 2000, threats to his wife, and the vandalism of his son's taxi.

We review the IJ's findings of fact under the "substantial evidence" test: we must affirm the IJ's decision "if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." Al Najjar v. Ashcroft, 257 F.3d 1262, 1283-84 (11th Cir. 2001) (citation omitted). "To reverse the IJ's fact findings, we must find that the record not only supports reversal, but compels it." Mendoza v. U.S. Attorney Gen., 327 F.3d 1283, 1287 (11th Cir. 2003). We also review the IJ's credibility determinations under the "substantial evidence" test. D-Muhumed v. U.S. Attorney Gen., 388 F.3d 814, 818 (11th Cir. 2004). And on credibility determinations, we may not substitute our judgment for that of the IJ. Id.

An alien may obtain asylum if he is a "refugee": a person unwilling to return to his country of nationality "because of persecution or a well-founded fear of persecution on account of," among other things, political opinion. 8 U.S.C. §§ 1101(a)(42)(A), 1158(a)(1), (b)(1). The asylum applicant bears the burden of proving statutory "refugee" status with specific and credible evidence. Al Najjar, 257 F.3d at 1284, 1287 (11th Cir. 2001).

We initially note that Uribe does not mention the IJ's adverse credibility determination, which provided the basis for her rejection of Uribe's asylum and withholding of removal claims. Instead, Uribe asserts that he presented substantial evidence supporting his claims. But this misapprehends our law: we review the IJ's decision -- not the petitioner's claims -- for whether that decision is supported by substantial evidence. See Al Najjar, 257 F.3d at 1283-84. And here we determine that substantial evidence supports the IJ's adverse credibility determination.

The IJ pointed to several inconsistencies between Uribe's testimony and his asylum application. Uribe stated in his application that he never participated in politics, but he testified that he was a Liberal Party member since 1998 and was involved in party activities. Uribe provided no documentation of his party membership apart from a letter indicating his involvement since 1997. Uribe

5

offered no credible evidence connecting FARC to the Renault incident. Also, he testified that a person in the Renault aimed a gun at him, but his application failed to mention a gun. He provided no statement from his wife about the allegedly threatening phone calls she received. Although Uribe claimed he did not report the FARC incidents to Colombian authorities because he was afraid of retaliation, his son filed a district attorney report on the alleged vandalism of the taxi. Uribe also did not present evidence authenticating his photographs of the vandalized taxi. And Uribe stated that, despite his fear of harm from FARC, he left the United States in 2000 without applying for asylum, returned to Colombia, and resumed driving a taxi.

In other words, the inconsistencies between the facts alleged in the asylum application and Uribe's testimony are not minor: they call into doubt the entire basis for Uribe's asylum claim. See Gao v. Ashcroft, 299 F.3d 266, 272 (3d Cir. 2002) (stating that adverse credibility finding must go to the "heart" of the asylum claim and should not be based on minor inconsistencies). An IJ's "extremely detailed adverse credibility determination alone may be sufficient to support the IJ's denial of [an alien's] petition." D-Muhumed, 388 F.3d at 819. Here, the IJ provided cogent reasons for her credibility determination: these reasons are supported by substantial record evidence. See id. (citations omitted).

6

Consequently, we uphold the IJ's determination that Uribe was not entitled to asylum.[3]

**PETITION DENIED.**

---

[3] We reject Uribe's claim that he qualified for withholding of removal, a higher standard than what is needed to show entitlement to asylum relief and a standard that Uribe has not met. See Al Najjar, 257 F.3d at 1292-93.