[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

**FILED**
**U.S. COURT OF APPEALS**
**ELEVENTH CIRCUIT**
**December 6, 2005**
**THOMAS K. KAHN**
**CLERK**

No. 05-13109
Non-Argument Calendar
_____

Agency Nos. A95-079-665
&A95-079-666

LUZ MARI GARCIA-GARCIA,
ALVARO MONTES TOBON,
FELIPE MONTES GARCIA,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(December 6, 2005)**

Before TJOFLAT, BARKETT and HULL, Circuit Judges.

PER CURIAM:

Luz Mari Garcia-Garcia, proceeding with counsel, petitions for review of the

Board of Immigration Appeals' order affirming without opinion the Immigration Judge's denial of her application for asylum and withholding of removal.[1] After review, we deny Garcia-Garcia's petition for review.

## I. BACKGROUND

Garcia-Garcia, a native and citizen of Colombia, entered the United States as a visitor for pleasure. Garcia-Garcia subsequently submitted an application for asylum, withholding of removal, and CAT relief alleging persecution on account of her political and religious involvement in the community.[2] Essentially, Garcia-Garcia's application asserted: (1) her family belonged to the Colombian Liberal Party and the Catholic church; (2) her family had been threatened by telephone since 1995, pursued by the FARC in their vehicle, and put under surveillance; (3) the FARC attempted to abduct her son, but got another child due to mistaken identity; and (4) she and her family would be raped and killed if they returned to Colombia.[3]

---

[1]Garcia-Garcia is the lead applicant for her husband, Alvaro Montes Tobon, and their son, Felipe Montes Garcia. For the sake of simplicity, and because her husband's and child's applications are dependant upon hers, we refer only to Garcia-Garcia's application for asylum and withholding of removal.

[2]In her brief on appeal, Garcia-Garcia does not raise any challenge to the IJ's or BIA's denial of CAT relief. "When an appellant fails to offer argument on an issue, that issue is abandoned." Sepulveda v. United States Att'y Gen., 401 F.3d 1226, 1228 n.2 (11th Cir. 2005).

[3]An alien who arrives in or is present in the United States may apply for asylum. See 8 U.S.C. § 1158(a)(1). The Attorney General has discretion to grant asylum if the alien meets the INA's definition of a "refugee." See 8 U.S.C. § 1158(b)(1). A "refugee" is

The IJ denied Garcia-Garcia's application after finding her testimony and supporting documentation lacked credibility. For example, the IJ noted that: (1) the petitioners remained in Colombia for a significant period of time after the threats commenced; (2) Garcia-Garcia and her children remained in Colombia when her husband first came to the United States; (3) Garcia-Garcia did not file for asylum during her first trip to the United States, but rather returned to Colombia; (4) Garcia-Garcia came to the United States for the first time with her youngest son, leaving her oldest son behind for ten months despite her claim that the FARC just tried to kidnap him; (5) there was a significant delay between when Garcia-Garcia arrived in the United States and her application for asylum; (6) Garcia-Garcia's Liberal Party card appeared to be a forgery because of irregularities in date, typeface, and uniformity of information, as well as the fact that it was clearly a color copy of a Liberal Party Card; (7) the psychological evaluation Garcia-Garcia submitted appeared to be a forgery because even though it referenced a 2001 evaluation, it bore the current ages of the family and because the date of

---

any person who is outside any country of such person's nationality or, in the case of a person having no nationality, is outside any country in which such person last habitually resided, and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion . . . .

8 U.S.C. § 1101(a)(42)(A). "The asylum applicant carries the burden of proving statutory 'refugee' status." D-Muhumed v. United States Att'y Gen., 388 F.3d 814, 818 (11th Cir. 2004).

3

referral, June 12, 2001, would have been one day after Garcia-Garcia had left for the United States; and (8) Garcia-Garcia failed to mention that shots were fired at her home in her asylum application.

Based on its adverse credibility determination, the IJ denied Garcia-Garcia's application for asylum and withholding of removal. The BIA summarily affirmed the IJ's opinion, and Garcia-Garcia now petitions this Court for review.

## II. DISCUSSION

A.      Standard of Review

Because the BIA summarily affirmed the IJ's opinion, we review the IJ's opinion as it is the final determination of the agency. See Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). As stated in Forgue v. United States Att'y Gen., "[w]e review the IJ's factual determinations under the substantial evidence test." 401 F.3d 1282, 1286 (11th Cir. 2005) (citations omitted). Furthermore,

> [u]nder this highly deferential test, we affirm the IJ's decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole. Thus, we do not engage in a de novo review of factual findings by the IJ. Similarly, we cannot find, or consider, facts not raised in the administrative forum, nor can we reweigh the evidence from scratch.

Id. (quotation marks, citations, and alterations omitted). This Court has also concluded that "[a]s with other factual findings, credibility determinations likewise are reviewed under the substantial evidence test. That is, the trier of fact must

determine credibility, and [we] may not substitute [our] judgment for that of the IJ with respect to credibility findings." Id. (quotation marks, citations, and alterations omitted).

B.      The IJ's Adverse Credibility Determination Regarding Garcia-Garcia

In this case, the IJ made very specific, cogent findings as to Garcia-Garcia's credibility.  For example, the IJ determined that some of Garcia-Garcia's documentary evidence was forged.  The IJ also relied on the fact that Garcia-Garcia did not apply for asylum during her first trip to the United States and that Garcia-Garcia had left her oldest son in Columbia for ten months despite her claim that the FARC just tried to kidnap him.  Furthermore, the IJ determined that the differences and inconsistences between Garcia-Garcia's application and testimony were material.

This Court has concluded that

the IJ must offer specific, cogent reasons for an adverse credibility finding.  Once an adverse credibility finding is made, the burden is on the applicant alien to show that the IJ's credibility decision was not supported by specific, cogent reasons or was not based on substantial evidence.  A credibility determination, like any fact finding, may not be overturned unless the record compels it.

Id. at 1287 (quotation marks and citations omitted).

Given the evidence in the record, it was clearly reasonable for the IJ to conclude that Garcia-Garcia's testimony was not credible.  See D-Muhumed v.

5

United States Att'y Gen., 388 F.3d 814, 819 (11th Cir. 2004) ("[T]he IJ's extremely detailed adverse credibility determination alone may be sufficient to support the IJ's denial of [a] petition."). Furthermore, Garcia-Garcia has not carried her burden in rebutting the IJ's adverse credibility finding.

Because we cannot substitute our judgment for that of the IJ, and because the IJ considered all the relevant evidence in the record in making its adverse credibility determination, we conclude that the IJ's denial of Garcia-Garcia's application for asylum and withholding of removal is supported by substantial evidence.

PETITION DENIED.