[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

**FILED**

**U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
February 13, 2006
THOMAS  K. KAHN
CLERK**

_____

No. 05-14667
Non-Argument Calendar

_____

Agency Nos. A97-195-535
& A97-195-536

JUAN PABLO BUENO,
ADRIANA MARTINEZ,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(February 13, 2006)**

Before CARNES, MARCUS and WILSON, Circuit Judges.

PER CURIAM:

Juan Pablo Bueno, a native and citizen of Colombia, petitions for review of

the Board of Immigration Appeals' order adopting and affirming the immigration judge's decision denying his application for asylum and withholding of removal under the Immigration and Nationality Act and relief under the United Nations Convention Against Torture ("CAT relief").[1]  We deny the petition.

## I.

Bueno entered the United States on August 16, 2002, as a non-immigrant visitor authorized to stay until February 15, 2003.  He filed an asylum application with the former Immigration and Naturalization Service ("INS")[2] in February 2003.  In June 2003 INS issued Bueno a notice to appear charging him with removability under 8 U.S.C. § 1227(a)(1)(B) as an alien who had remained in the United States longer than permitted.  Appearing through counsel at a removal hearing before the IJ, Bueno conceded removability.

Bueno testified that in early 2002, he lived with his parents and two sisters in Cali, Colombia.  Bueno is also very close to his aunt, Martha Lucia Bueno, who then served as an assistant to the Cali Municipal Council.  In addition to her official duties, Ms. Bueno was actively involved in Citizen Power, a political movement, and organized political events in Cali on behalf of candidates for the

---

[1] Bueno is the primary applicant.  His wife, Adriana Martinez, is a derivative applicant and therefore relies on Bueno's asylum application.

[2] The Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135, abolished the INS and transferred its functions to the Department of Homeland Security.

municipal council.  Bueno collaborated with his aunt on Citizen Power events and also participated in drug education groups called "health brigades."

In February 2002, Ms. Bueno received a phone call from members of urban cells of the Revolutionary Armed Forces of Colombia ("FARC").[3]  The callers sought information about the municipal council, such as the members' schedules and personal data as well as details about council events.  She refused to cooperate. On March 4, 2002, FARC called Ms. Bueno again, but she refused to provide any information, even if it meant putting her life in jeopardy.

On March 12, 2002, FARC called and told Ms. Bueno, who has no children of her own, that FARC would harm her nephew, Bueno, unless she provided them with information.  According to Bueno, FARC told his aunt that they would kidnap Bueno, take him into the mountains, and send her "a little piece of [Bueno] every time she refused to help them."

Later that month, Bueno and a friend were distributing Citizen Power flyers encouraging students at the Santiago de Cali University to vote in the upcoming Colombian presidential election.  When Bueno went to retrieve more flyers from a car, men who identified themselves as FARC approached him, took the flyers and

---

[3] The U.S. Department of State Colombia Country Report on Human Rights Practices for 2003 describes FARC as a terrorist organization responsible for countless murders, kidnapings, and other acts of terror in Colombia.

ripped them up, and told Bueno that they did not want to see him distributing "propaganda" again. The men then shoved Bueno against a car, and he hit his head. Bueno's friend submitted a sworn statement in which he stated that he had been with Bueno that day and that Bueno appeared "frightened" as he recounted the incident.

In May 2002 Bueno's father received a call from FARC members stating that Bueno would pay for his aunt's refusal to cooperate with them. The next day, Bueno himself received a similar phone call. In July 2002 the Buenos' maid observed two suspicious men near the Buenos' home. Bueno's father and aunt then decided to send Bueno to stay with a family friend in Popayan, which is two hours away by car. Bueno testified that a week later, his aunt called him and told him that FARC had again threatened her and told her that they knew Bueno was in Popayan. The next day, Ms. Bueno went to Popayan to bring Bueno back to Cali.

On August 16, 2002, Bueno traveled with his aunt to the United States. Ms. Bueno returned less than a month later. Bueno testified that his aunt had received calls from FARC members threatening to harm her husband as recently as November 2003. Ms. Bueno continues to work for the Cali Municipal Council. None of Bueno's other family members have left Cali.

Bueno testified that he never reported any of the threats from FARC to the

4

police.  He explained that his family feared that FARC had "infiltrated everywhere" and "prefer[red] to keep quiet in order for [FARC] not to take any type of reprisal."  Bueno stated that "the police authorities cannot do anything about it."  Bueno also testified that his aunt had never informed the Cali Municipal Council members about the threats.

On April 19, 2004, the IJ denied Bueno's asylum application.  The IJ found that Bueno had not proven past persecution because, although he had been threatened several times and accosted once, he had never been harmed by FARC despite multiple opportunities for them to do so.  The IJ also noted that Bueno's aunt, who was "in the eye of the storm," had never been harmed, had never reported the FARC threats to the Cali Municipal Council members, and continued to work for the Cali Municipal Council two years after Bueno left Colombia.  The IJ also made an adverse credibility determination regarding Bueno's testimony that he was targeted because of his aunt's work.  The IJ refused to assign weight to a sworn statement by Ms. Bueno because she did not testify on her nephew's behalf, despite having traveled with him to the United States two years earlier.  Finally, the IJ found that the reasonableness of Bueno's fear of returning to Colombia "is reduced when one considers that his family remains in Colombia unharmed."

In July 2005 the BIA dismissed Bueno's appeal.  The BIA adopted and

affirmed the IJ's decision "to the extent that the Immigration Judge found that the lead respondent failed to meet his burden of proof" for asylum, withholding of removal, and CAT relief. The BIA did not address the IJ's credibility findings, instead finding that Bueno "failed to meet his burden of proof even if his testimony is deemed credible."

## II.

We review the BIA's decision as well as the IJ's decision to the extent that the BIA expressly adopted it. Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). We review any legal determinations de novo. D-Muhumed v. U.S. Att'y Gen., 388 F.3d 814, 817 (11th Cir. 2004). We review findings of fact under the substantial evidence test and must affirm the decision below "if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." Al Najjar, 257 F.3d at 1284 (quotation marks and citation omitted). Under this highly deferential standard of review, a denial of relief may be reversed only if the evidence "compels" it. See INS v. Elias-Zacarias, 502 U.S. 478, 481 n.1, 112 S. Ct. 812, 815 n.1 (1992).

## III.

To be eligible for asylum, an applicant must first demonstrate that he is a refugee. 8 U.S.C. § 1158(b)(1)(A). The INA defines "refugee" as follows:

[A]ny person who is outside any country of such person's nationality . . . and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion . . . .

Id. § 1101(a)(42)(A). To establish refugee status, an applicant for asylum must present specific and credible evidence that he has experienced past persecution or that he has a well-founded fear of future persecution because of a statutorily listed factor. See 8 C.F.R. § 208.13(b)(1)–(2); Al Najjar, 257 F.3d at 1287 ("the alien [must] present specific, detailed facts showing a good reason to fear that he or she will be singled out for persecution") (quotation marks and citation omitted).

Substantial evidence supports the IJ's finding that Bueno failed to prove past persecution. Although Bueno and his family received several threatening phone calls from alleged FARC members, the fact of the matter is that Bueno was never harmed by FARC in Colombia. The one instance in which alleged FARC members did harass Bueno, while frightening, does not rise to the level of persecution. See Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1231 (11th Cir. 2005) ("[P]ersecution is an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation . . . . [M]ere harassment does not amount to persecution.") (quotation marks and citation omitted).

7

In the absence of a showing of past persecution, the asylum applicant has the burden to establish a "well-founded fear" of future persecution by proving that there is a "reasonable possibility" that he will suffer persecution if he returned to his country and that the applicant could not avoid persecution by relocating within the country. 8 C.F.R. § 208.13(b)(2)(i)(B) & (b)(2)(ii). The well-founded fear inquiry contains both an objective and subjective component. Al Najjar, 257 F.3d at 1289. "[A]n applicant must demonstrate that his or her fear of persecution is subjectively genuine and objectively reasonable." Id.

Whether Bueno has a well-founded fear of persecution if returned to Colombia is a closer call, but the evidence does not compel us to reverse the denial of relief. See Elias-Zacarias, 502 U.S. at 481 n.1, 112 S. Ct. at 815 n.1. The threatening phone calls from alleged FARC members that Bueno testified about establish that FARC was keeping tabs on Bueno. However, the evidence also shows that FARC had multiple opportunities to make good on its promise to kidnap him in order to coerce his aunt, but it never did. Moreover, Bueno's aunt continues to work for the Cali Municipal Council and has never been harmed. Nor has FARC ever harmed Ms. Bueno's husband, whom FARC has also threatened. These facts support the IJ's finding that Bueno's fear of returning to Colombia on account of persecution is not objectively reasonable.

8

Moreover, we note that Bueno failed to establish a well-founded fear of persecution under a theory of imputed political opinion. See Al Najjar, 257 F.3d at 1289 ("An imputed political opinion, whether correctly or incorrectly attributed, may constitute a ground for a well-founded fear of political persecution within the meaning of the INA.") (quotation marks, brackets, and citation omitted). Bueno's testimony, even if fully credited, proves that FARC targeted him to gain leverage over his aunt in order to induce her to provide them with information on Cali Municipal Council members. FARC did not target Bueno because of his (or his aunt's) political opinion or activities.

For the foregoing reasons, we deny Bueno's petition as to his claim for asylum.

**IV.**

Bueno's claim for withholding of removal is subject to a more stringent standard than that for the granting of asylum. See Al Najjar, 257 F.3d at 1292–93 ("Where an applicant is unable to meet the well-founded fear standard for asylum, he is generally precluded from qualifying for either asylum or withholding of deportation.") (quotation marks and citation omitted). Because we affirm the BIA's conclusion that Bueno failed to establish a well-founded fear of persecution in order to be entitled to asylum, we also deny his petition as to withholding of

9

removal.

## V.

Bueno makes no arguments on appeal concerning his request for CAT relief. Therefore, he has waived that issue. See Sepulveda, 401 F.3d at 1228 n.2 ("Sepulveda does not raise any challenge in her brief to the denial of relief under the Convention Against Torture (CAT). When an appellant fails to offer argument on an issue, that issue is abandoned."); Johnson Enters. of Jacksonville, Inc. v. FPL Group, Inc., 162 F.3d 1290, 1308 n.43 (11th Cir. 1998) ("Claims not presented to the court of appeals are considered waived."). Accordingly, we deny his petition as it relates to CAT relief.

**PETITION DENIED.**