[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 1, 2006
THOMAS K. KAHN
CLERK

_____

No. 05-14284
Non-Argument Calendar
_____

BIA No. A96-270-295

CARLOS ALBERTO BARRETO,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of an Order of the
Board of Immigration Appeals

_____

(March 1, 2006)

Before BLACK, BARKETT and KRAVITCH, Circuit Judges.

PER CURIAM:

Carlos Barreto seeks review of the Board of Immigration Appeals's ("BIA")

affirmance of the Immigration Judge's ("IJ") denial of asylum and withholding of removal. The IJ properly determined that Barreto's testimony regarding his fear of persecution lacked credibility. Even if his testimony was credible, however, Barreto failed to meet his burden of showing that he was entitled to asylum relief. Finally, because the asylum claim fails, the claim for withholding of removal, which requires the petitioner to meet a more stringent standard than he must meet for the asylum claim, also fails. Accordingly, we deny Barreto's petition.

## I. Background

Barreto, a native and citizen of Colombia, was admitted to the United States on a non-immigrant visitor visa with an expiration date of November 18, 2002. He remained beyond that date, and the Immigration and Naturalization Service ("INS")[1] issued a Notice to Appear, charging Barreto with removability under INA § 237(a)(1)(B), 8 U.S.C. § 1227(a)(1)(B).

Barreto filed an application for asylum and withholding of removal under the INA and the Convention Against Torture ("CAT"), alleging that he had been threatened and persecuted by Colombian guerillas based on his political opinion. He stated that he feared that he would be killed if forced to return to Colombia. In support of his application, he submitted two declarations from Colombian citizens

_____

[1] On November 25, 2002, President Bush signed into law the Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2125. The Act created a new Department of Homeland Security, abolished the INS, and transferred the INS's functions to the new department.

corroborating the threats, several police reports for incidents from 2002, and the U.S. Department of State Country Reports detailing the problems with guerilla organizations.

At the hearing before the IJ, Barreto conceded removability and testified that he had been a commissioner and mayor in the municipality Belen San Juan Tolima, located outside his hometown of Ibaque. Beginning in 1999, after he became mayor, he received phone calls from members of a sub-group of AUC, a paramilitary organization, trying to extort money from him and ordering him to abandon the area. Barreto testified that he reported the threats to the national police and that an investigation revealed that the calls were coming from prisoners in a jail. In response to the threats, Barreto stated that the police told him to change his routes and schedule and provided him with a bodyguard. He also stated that the extortion ring was later destroyed. In later testimony, Barreto stated that the calls did not come from AUC members.

After Barreto completed his term as mayor, he participated in work with two non-governmental organizations that sent him into municipalities to assist locals in setting up businesses. In 2001, during a visit to one municipality, area residents told him that men in dark cars were asking about Barreto's residence and farm. The last time Barreto visited the municipality, he saw a body in the road. The man's face was unrecognizable, but Barreto later learned that the man was his

3

friend and had been shot after men in black cars picked him up off the street. According to Barreto, AUC claimed credit for the death. Eight days later, a massacre occurred in Belen San Juan, and AUC claimed credit. As a result, Barreto left the municipality.

Barreto then explained that he received phone calls from members of the 21st Front of the FARC, a guerilla organization, beginning in 2002. FARC members also tried to extort money from him and accused him of assisting AUC when he was mayor. Barreto denied helping either FARC or AUC. He stated that although AUC wanted to interview him, he refused the meeting. He later stated that it was FARC that wanted to meet with him. He stated that he did not meet with FARC, but later testified that FARC members abducted him in 2000. When the IJ asked him why he did not mention this incident in his asylum application but mentioned it during his interview with an asylum officer, he explained that he did not mention it earlier because he did not believe it was part of the persecution alleged, but rather the reason AUC would later target him for extortion.

Barreto testified that he was afraid to return to his home and he feared the phone calls, so he moved in with his mother-in-law before he came to the United States. He stated that he feared that FARC or AUC would kill him if he returned. Although he testified that he did not have any contact with the guerillas other than the calls, he later admitted that he had contact with FARC members while he was

4

mayor because members would attend town meetings. Barreto also testified that he came to the United States with his daughter in 2001, but later stated that he was in the country in 2002 and his daughter was in the country in 2001 and 2003.

The IJ denied relief, finding that Barreto was not credible because he contradicted himself and his story was implausible. The IJ determined that his story might have "some kernel" of truth, but that even if she believed Barreto's testimony on its face, it was insufficient to establish asylum eligibility. The IJ concluded that Barreto did not have a well-founded fear of persecution because the threats ended after Barreto's term as mayor expired, Barretto had taken corrective action after the calls, and he had remained in his own home until a month before he came to the United States.

Barreto appealed the IJ's decision, arguing that the IJ erred in her credibility finding and asserting that he met the definition of refugee for asylum purposes. The BIA affirmed the IJ, explaining that even if Barreto's testimony was credible, the phone threats did not rise to the level of persecution. The BIA further added that Barreto had not shown that the threat was country-wide.

## II. Standard of Review

When, as here, the BIA adopts all or part of the IJ's order, we review the BIA's decision, except to the extent that it expressly adopts the IJ's opinion. Huang v. U.S. Att'y Gen., 429 F.3d 1002, 1008 (11th Cir. 2005). To the extent

that the BIA adopts the IJ's reasoning, this court reviews the IJ's decision as well. Chacon-Botero v. U.S. Att'y Gen., 427 F.3d 954, 956 (11th Cir. 2005). We review factual determinations under the substantial evidence test and "must affirm the [IJ's] decision if it is 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'"[2] Al Najjar v. Ashcroft, 257 F.3d 1262, 1283-84 (11th Cir. 2001) (internal citation omitted). If supported by substantial evidence, this court must defer to the IJ's decision unless the evidence compels a reasonable fact finder to find otherwise. INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992).

### III. Discussion

The Attorney General has discretion to grant asylum if an alien meets the INA's definition of "refugee." INA § 208(b)(1), 8 U.S.C. § 1158(b)(1). The INA defines refugee:

> [A]ny person who is outside any country of such
>
> person's nationality . . . and who is unable or unwilling
>
> to return to, and is unable or unwilling to avail himself or
>
> herself of the protection of, that country because of

---

[2] Congress recently passed the REAL ID Act, which altered this court's review of immigration appeals. In Huang, this court noted that pursuant to the REAL ID Act, all petitions for review are governed by the permanent rules, and that, under the Act as codified at INA § 208(b)(1), 8 U.S.C. § 1158(b)(1), the Secretary of Homeland Security, in addition to the Attorney General, has discretion to grant asylum. 429 F.3d at 1008 n.3.

persecution or a well-founded fear of persecution on

account of . . . political opinion . . . .

8 U.S.C. § 1101(a)(42)(A) & (B).  The asylum applicant bears the burden of

proving refugee status.  Al Najjar, 257 F.3d at 1284.

To establish asylum eligibility, the alien must, with specific and credible

evidence, establish: (1) past persecution on account of a statutorily listed factor,

e.g., political opinion; or (2) a "well-founded fear that the statutorily listed factor

will cause such future persecution."[3]  8 C.F.R. § 208.13(a), (b); Al Najjar, 257 F.3d

at 1287.  Demonstrating a connection between the statutorily listed factor and the

well-founded fear "requires the alien to present specific, detailed facts showing a

good reason to fear that he or she will be singled out for persecution on account of

such an opinion."  Al Najjar, 257 F.3d at 1287 (internal quotation omitted)

(emphasis in original).

The burden of proof for persecution also rests with the alien, but the INA

does not expressly define "persecution" for purposes of qualifying as a "refugee."

INA § 101(a)(42), 8 U.S.C. § 1101(a)(42).  We have noted, however, that

---

[3] Thus, an applicant must demonstrate "that his or her fear of persecution is subjectively genuine and objectively reasonable.  The subjective component is generally satisfied by the applicant's credible testimony that he or she genuinely fears persecution.  In most cases, the objective prong can be fulfilled either by establishing past persecution or that he or she has a 'good reason to fear future persecution.'" Yang v. U.S. Att'y Gen., 418 F.3d 1198, 1202 (11th Cir. 2005).

"persecution is an 'extreme concept," requiring "more than a few isolated incidents of verbal harassment or intimidation," and that "[m]ere harassment does not amount to persecution." Gonzalez v. Reno, 212 F.3d 1338, 1355 (11th Cir. 2000) (citations omitted). The alien's own testimony may in some cases be the only evidence available, and it can suffice when the testimony is believable, consistent, and sufficiently detailed to provide a plausible and coherent account of the basis for his fear. Matter of Mogharrabi, 19 I. & N. Dec. 439, 445-46 (BIA 1987).

Here, the IJ determined that Barreto lacked credibility, and this determination is entitled to deference. We review the IJ's credibility determinations under the "substantial evidence" test. D-Muhumed v. U.S. Att'y Gen., 388 F.3d 814, 818 (11th Cir. 2004). We should not substitute our judgment for that of the IJ with respect to credibility findings unless a reasonable fact finder would be compelled to reach the opposite conclusion. Yang v. U.S. Att'y Gen., 418 F.3d 1198, 1201 (11th Cir. 2005). The IJ noted inconsistencies in Barreto's testimony and asylum application that led her to conclude that Barreto's testimony lacked credibility. A review of the record does not compel us to reach the opposite conclusion.

Barreto contends that the IJ reached her adverse credibility determination because the IJ was confused about the sequence of events. Our review leads us to conclude, however, that if the IJ was confused, it was because Barreto was

8

confusing her. Barreto contradicted himself numerous times and, in the IJ's view, provided an implausible story. The IJ noted that his testimony, asylum application, and interview with the asylum officer were replete with inconsistencies, including inconsistencies dealing with his contact with FARC and AUC, the crux of his persecution argument. Furthermore, even when the IJ asked, Barreto was unable to explain coherently why the national police would provide him with a bodyguard even though the AUC extortion ring operating out of the jail was destroyed or why he would continue to fear the AUC members. Although this extremely detailed adverse credibility determination is supported by substantial evidence and is sufficient to support the denial of an application for asylum, we also conclude that Barreto cannot meet the standard of establishing past persecution or a well-founded fear of future persecution. D-Muhumed, 388 F.3d at 819 (internal citation omitted).[4] Therefore, we deny Barreto's petition as to his application for asylum. Additionally, because Barreto cannot meet the standard for establishing asylum, his claim for withholding of removal also fails because a more stringent standard applies to withholding of removal claims.

**PETITION DENIED**.

---

[4] Barreto initially raised claims under CAT before the IJ but failed to raise those claims before the BIA. To the extent that Barreto challenges the IJ's ruling on his CAT claim, we lack jurisdiction over that claim. 8 U.S.C. § 1252(d); Fernandez-Bernal v. U.S. Att'y Gen., 257 F.3d 1304, 1317 n.13 (11th Cir. 2001).