[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 04-16084
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
June 23, 2005
THOMAS  K. KAHN
CLERK

Agency No. A77-911-510

MADELUS DAVILMAR,

                                                              Petitioner,

       versus

U.S. ATTORNEY GENERAL,

                                                              Respondent.

_____

Petition for Review from a Final Order
of the Board of Immigration Appeals

_____

(June 23, 2005)

Before BLACK, CARNES, and PRYOR, Circuit Judges.

PER CURIAM:

       Madelus Davilmar, a native and citizen of Haiti, came to the United States

in 2001 at the age of sixteen. Upon being notified that he was a removable alien, Davilmar filed a claim for asylum, sought withholding of removal under the Immigration and Naturalization Act, and requested relief under the United Nations Convention Against Torture and Other Cruel, Inhuman and Degrading Treatment or Punishment. The IJ denied Davilmar relief and entered an order directing that he be removed to Haiti. The Board of Immigration Appeals affirmed.

Through counsel, Davilmar petitions this Court for review of his claim for asylum. On appeal, he has not argued that he is entitled to withholding of removal or CAT relief and, accordingly, he has abandoned those claims. See Sepulveda v. U.S. Attorney Gen., 401 F.3d 1226, 1228 n.2 (11th Cir. 2005). We deny the petition.

## I.

Davilmar first argues that his appeal to the BIA warranted a three-member panel review. The regulations governing the BIA's case management system provide that a case be heard by a single Board member unless the case involves one of six enumerated circumstances. 8 C.F.R. § 1003.1(e).[1] The initial determination of whether a case should be heard by a single Board member or a

---

[1] In pertinent part, 8 C.F.R. § 1003.1(e) provides: "Unless a case meets the standards for assignment to a three-member panel under paragraph (e)(6) of this section, all cases shall be assigned to a single Board member for disposition."

three-member panel is made by a screening panel comprised of Board members. 8 C.F.R. § 1003.1(e)(1)[2]; 8 C.F.R. § 1003.1(a)(3).[3] Once the screening panel decides that a case should be heard by a single Board member, that Board member has the authority to determine that the case should be instead referred to a three-member panel. 8 C.F.R. § 1003.1(e)(3)[4]; see 8 C.F.R. § 1003.1(e)(5).[5]

The six circumstances for which "[c]ases may . . . be assigned for review by a three-member panel" are enumerated in 8 C.F.R. § 1003.1(e)(6). One of those circumstances is "[t]he need to settle inconsistencies among the rulings of different immigration judges." 8 C.F.R. § 1003.1(e)(6)(i). Davilmar contends that a three-member panel was warranted here because a precedent-setting case was needed to resolve inconsistent decisions on the issue of whether street youths in

---

[2] In pertinent part, 8 C.F.R. § 1003.1(e)(1) requires that all cases "be referred to the screening panel for review."

[3] In pertinent part, 8 C.F.R. § 1003.1(a)(3) provides that "the Chairman shall assign any number of Board members, as needed, to serve on the screening panel to implement the case management process as provided in paragraph (e) of this section."

[4] In pertinent part, 8 C.F.R. § 1003.1(e)(3) provides: "A single Board member assigned under the case management system shall determine the appeal on the merits as provided in paragraph (e)(4) or (e)(5) of this section, unless the Board member determines that the case is appropriate for review and decision by a three-member panel under the standards of paragraph (e)(6) of this section."

[5] In pertinent part, 8 C.F.R. § 1003.1(e)(5) governs cases assigned to a single Board member for decision on the merits but which cannot be affirmed without decision. It references the possibility that "the Board member [can] designate[] the case for decision by a three-member panel under paragraph (e)(6) of this section under the standards of the case management plan."

Haiti constitute a cognizable social group. Davilmar has partially cited two unpublished BIA decisions in support of his contention that various Immigration Judges have been resolving the issue differently. He, however, has not attached the decisions for our review, nor has he provided full citations that would allow us to find them. Accordingly, Davilmar has not demonstrated that review by a three-member panel was required "to settle inconsistencies among the rulings of different immigration judges." 8 C.F.R. § 1003.1(e)(6)(i).[6]

Davilmar also contends that a three-member panel was required because the IJ was biased against him. Davilmar apparently thinks that a three-judge panel would be more likely to reverse the IJ than a single judge would be. Generously assuming that bias might fall within one of the enumerated circumstances, Davilmar's claim still fails because he has not demonstrated that the IJ was biased against him. Davilmar offers a single comment made by the IJ as an example of bias. Out of context and without more, the comment appears to be merely a question or comment; it is not clear evidence of bias.

In light of Davilmar's failure to establish that his case presents any of the enumerated circumstances in 8 C.F.R. § 10031.(e)(6), we need not—and we do

---

[6] We recognize that the IJ said in his oral decision that there "apparently" are conflicting decisions. Record at 194. Davilmar, however, has not produced those decisions or pointed to where, if any where, in the record they might be found.

not—reach the question of whether review of a three-member panel is required when those circumstances are established. Nor do we decide whether the failure of the BIA to use a three-member panel in circumstances in which the regulations call for one would require reversal of its decision.

## II.

Davilmar next argues that the IJ's refusal to allow expert testimony on Haiti street youth constituted "harmful error." Davilmar conceded that he failed to timely list the expert as a witness. He contends, however, that the expert would have provided testimony establishing Haiti street youth as a cognizable, persecuted social group. The government assumed that this is a Due Process challenge and, absent any guidance from Davilmar, we will too.

"To prevail . . . on a due process challenge to a deportation proceeding, an alien must show substantial prejudice," which means that the result would have been different if not for the violation. Patel v. Attorney Gen., 334 F.3d 1259, 1263 (11th Cir. 2003); Ibrahim v. I.N.S., 821 F.2d 1547, 1550 (11th Cir. 1987). To show substantial prejudice in this case, Davilmar must show that if his expert witness had been allowed to testify that testimony would have led to a different result.

Davilmar contends that the expert would have provided testimony

establishing Haiti street youth as a cognizable, persecuted social group, in that they are targeted by police for persecution and criminalized by the Haitian general public. This information, however, was presented in the evidence in the form of an article by the expert and an affidavit from that expert. The IJ explicitly stated that he had considered this evidence. Moreover, as discussed below, the IJ concluded that even if Haiti street youth are a cognizable, persecuted social group, Davilmar is not a member of that group. Hence, Davilmar has not shown that allowing his expert to testify would have led to a different result, and thus he cannot prevail on his due process claim.

## III.

Lastly, Davilmar argues that the IJ erred in finding that Haitian street youth do not constitute a distinct social group and that Davilmar failed to establish a well-founded fear of persecution based on his membership in that group.

"To the extent that the BIA's decision was based on a legal determination, this Court's review is de novo." D-Muhumed v. U.S. Attorney Gen., 388 F.3d 814, 817 (11th Cir. 2004). "The BIA's factual determinations are reviewed under the substantial evidence test, and this Court must affirm the BIA's decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." Id. at 817–18 (internal marks and citation omitted).

6

An alien who arrives in or is present in the United States may apply for asylum.  See INA § 208(a)(1), 8 U.S.C. § 1158(a)(1).  The Attorney General has discretion to grant asylum to an alien who meets the INA's definition of a "refugee."  See INA § 208(b)(1), 8 U.S.C. § 1158(b)(1).  A "refugee" is

> any person who is outside any country of such person's nationality . . . , and who is unable  or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of <u>persecution or a well-founded fear of persecution on account of</u> race, religion, nationality, <u>membership in a particular social group</u>, or political opinion . . . .

8 U.S.C. § 1101(a)(42)(A) (emphasis added).  To establish asylum eligibility, the alien must, with specific and credible evidence, establish (1) past persecution on account of a statutorily listed factor, or (2) a "well-founded fear" that the statutorily listed factor will cause such future persecution.  8 C.F.R. § 208.13(a), (b); <u>Al Najjar v. Ashcroft</u>, 257 F.3d 1262, 1287 (11th Cir. 2001).

Even assuming, without deciding, that Haitian street youth constitute a "particular social group" under 8 U.S.C. § 1101(a)(42)(A), substantial evidence supports the IJ's findings that Davilmar failed to establish his membership in that group.  First, Davilmar testified that he was 19 years old at the time of his hearing before the IJ and was, thus, an adult.  The evidence in the record indicates that Haitian street youth are comprised of youth between the ages of 6 and 18 years

7

old.

Second, Davilmar failed to prove he would be living on the street upon his return to Haiti. The record contains no evidence that Davilmar had ever been homeless while in Haiti. Rather, the record reflects that he had lived in his grandmother's house in Haiti, and that he had not inquired into whether other members of his family might be able to take him in upon his return. Morevoer, while Davilmar testified that there was "no work" in Haiti, he also testified that he had not explored employment opportunities in Haiti and he had a better education than most people in Haiti and spoke some English. Thus, while evidence indicates job opportunities in Haiti are scarce, Davilmar has not proven that he could not get a job upon his return and as a result might be left homeless.

For these reasons, substantial evidence supports the IJ's finding that Davilmar failed to establish his membership in the group of Haiti street youth. As a consequence, substantial evidence supports the IJ's finding that Davilmar failed to establish his eligibility for asylum.

**PETITION DENIED.**