[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
March 28, 2006
THOMAS K. KAHN
CLERK

No. 05-14609
Non-Argument Calendar

_____

Agency No. A95-263-780

SANDRA CAROLINA RIVERA,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(March 28, 2006)**

Before BLACK, BARKETT and PRYOR, Circuit Judges.

PER CURIAM:

Sandra Carolina Rivera, proceeding pro se, petitions for review of the

decision of the Board of Immigration Appeals that affirmed the denial of her application for asylum and withholding of removal under the Immigration and Nationality Act (INA) and the United Nations Convention Against Torture (CAT). We deny the petition.

Because the BIA adopted the decision of the Immigration Judge, we review the decision of the Immigration Judge as if it were the decision of the BIA. Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). We review de novo the legal determinations of the BIA. Id. "Administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). "The trier of fact must determine credibility, and this court may not substitute its judgment for that of the [Immigration Judge] with respect to credibility findings." D-Muhumed v. United States Att'y Gen., 388 F.3d 814, 818 (11th Cir. 2004).

Rivera, a citizen of Colombia, entered the United States on January 15, 2002, as a non-immigrant visitor with permission to stay until July 14, 2002, but Rivera remained in the United States beyond that date without authorization. The Immigration and Naturalization Service issued Rivera a notice to appear on July 31, 2002. Rivera filed an application of asylum and withholding of removal and alleged that she entered the United States to escape death threats from the

2

Revolutionary Armed Forces of Colombia (FARC) based on her father's political activity.

At the asylum hearing, Rivera stated that her father was first threatened by the FARC in 1998 because of his activities with the conservative party, and when he did not stop his activities, the threats were extended to the entire family. Although her asylum application mentioned only her father's activity, Rivera testified at the hearing that she assisted her father in his political activity by preparing educational materials for peasants. In 2001, Rivera and her family received threats by telephone. The family relocated several times within the city of Bogota to avoid the FARC. Rivera alleged that, after each move, the family would receive a telephone call stating that the FARC knew where they were located. In late January 2002, Rivera and her parents left Colombia. Rivera came to the United States, and her parents moved to Ecuador. Rivera also alleged that her mother's cousin had been assassinated by the FARC after she left Colombia. Rivera filed several documents in support of her application.

On cross-examination, Rivera stated that she did not mention her involvement in the conservative party in her asylum application because her attorney said it was unnecessary. Rivera stated that she did not report the 2001 telephone calls at the time they were received. She stated that she had a valid visa

3

to come to the United States since 1999 but waited until January 2002 to leave Colombia. Rivera stated that she never had any personal contact with the FARC, was never physically harmed in Colombia, and never attempted to relocate outside of Bogota. Rivera also stated that she came to the United States, instead of going with her parents to Ecuador, because she could continue learning English and the economy is better in the United States.

At the close of the testimony, the Immigration Judge concluded that Rivera's "testimony was not sufficiently detailed, consistent or believable to provide a plausible or coherent account of the basis for her fears and thus cannot suffice to establish her eligibility for asylum, withholding of removal or Torture Convention relief." The Immigration Judge concluded that the threats about which Rivera complained did not rise to the level of persecution, there was no evidence to connect the death of her mother's cousin to Rivera's allegations of persecution, and the actions of Rivera and her family did not comport with the behavior of people fleeing persecution. In addition, the Immigration Judge stated that he had concerns about the authenticity of some of Rivera's documents. The Immigration Judge denied asylum and withholding of removal.

An alien who arrives in or is present in the United States may apply for asylum. 8 U.S.C. § 1158(a)(1). An alien is entitled to asylum if he or she can

establish, with specific and credible evidence past persecution on account of his or her membership in a particular social group, political opinion, or other statutorily listed factor, or a "well-founded fear" that his or her membership in a particular social group, political opinion, or other statutorily listed factor will cause future persecution. 8 C.F.R. § 208.13(a), (b); Al Najjar, 257 F.3d at 1287. "Demonstrating such a connection requires the alien to present specific, detailed facts showing a good reason to fear that he or she will be singled out for persecution on account of such an opinion." Id. (citation and internal quotation marks omitted). In addition, "an applicant must demonstrate that his or her fear of persecution is subjectively genuine and objectively reasonable." Id. at 1289.

Substantial evidence supports the decision of the Immigration Judge that Rivera did not suffer past persecution or have a well-founded fear of future persecution. The telephone threats to Rivera and her family did not rise to the level of persecution, Sepulveda v. United States Att'y Gen., 401 F.3d 1226, 1231 (11th Cir. 2004), and the documents presented by Rivera regarding her the death of her mother's cousin did not establish that the death was related to Rivera's allegations of persecution.

Rivera's petition for review of the denial of her application for withholding of removal and relief under the Convention Against Torture also fails. Because

Rivera failed to establish the lesser burden of entitlement to asylum, she also cannot establish entitlement to withholding of removal, <u>D-Muhumed</u>, 388 F.3d at 819, and Rivera did not show that she "more likely than not" would be tortured if returned to Colombia, 8 C.F.R. § 208.16(c)(2).

**PETITION DENIED.**