[DO NOT PUBLISH]


IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 06-10780
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCT 5, 2006
THOMAS K. KAHN
CLERK

Agency No. A79-443-146

NIXON PRINTEMPS,

                                                                Petitioner,

versus

U.S. ATTORNEY GENERAL,

                                                                Respondent.


_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

**(October 5, 2006)**

Before BLACK, BARKETT and PRYOR, Circuit Judges.

PER CURIAM:

Nixon Printemps, a Haitian citizen, petitions for review of the decision of the Board of Immigration Appeals that adopted and affirmed the order of an Immigration Judge, which found Printemps removable and denied his applications for asylum, withholding of removal under the Immigration and Nationality Act, and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman and Degrading Treatment or Punishment. Because substantial evidence supports the ruling of the Immigration Judge and the BIA, we deny the petition.

## I. BACKGROUND

Printemps arrived at Miami International Airport on March 24, 2002, and presented to an immigration officer a passport and visa bearing Printemps's photograph but the name of Gary Ludovick. When the immigration officer asked about the name on the passport, Printemps readily admitted that the passport did not state his correct name. Printemps was then held for a secondary interview at which he stated that he had left Haiti because his life had been threatened and he was afraid he would be killed if he returned to Haiti.

The Department of Homeland Security issued Printemps a notice to appear on March 27, 2004. Printemps was charged with attempting to enter the United States using a fraudulent visa and photo-switched passport, see 8 U.S.C. §

1182(a)(6)(C)(i), and attempting to enter the United States without a valid visa, <u>see</u> 8 U.S.C. § 1182(a)(7)(A)(i)(I).

Printemps filed an application for asylum and withholding of removal. Printemps stated that he had been persecuted in Haiti because of his political opinion and he feared he would be harmed if he returned to Haiti. In his personal statement attached to his asylum application, Printemps stated that his younger brother was beaten to death by Hector Regala, a security agent for the National Palace. In response to the incident, Printemps presented the story of his brother's beating to the news media. Printemps participated in television and radio interviews, and a television crew visited his dying brother in the hospital. Regala was arrested shortly after the beating, but Printemps again went to the media when Regala had not been tried or prosecuted after several weeks. In his statement to the media, Printemps questioned the effectiveness of the government and asked, "How can an officer of the National Palace kill a child with impunity?"

After his second television appearance, Printemps was stopped at a roadblock by officers of the National Palace. The officers recognized Printemps and accused Printemps of causing the arrest of Regala and causing problems for the National Palace police. They struck Printemps across the left eyebrow and threatened his life. After his encounter with the National Palace police, Printemps

decided to flee Haiti. Although he was awaiting the arrival of a fiancé visa at the American Embassy because of his engagement to an American citizen, Printemps purchased a fraudulent visa and passport in the name of Gary Ludovick for $5000 and flew to the United States.

At his initial hearing, the Immigration Judge found that Printemps was removable for two reasons: (1) under section 1182(a)(6)(C)(i) because Printemps attempted to enter the United States using a fraudulent visa and passport; and (2) under section 1182(a)(7) because Printemps did not have a valid visa when he attempted to enter the United States. After his asylum hearing, at which Printemps testified consistently with his personal statement, the Immigration Judge denied Printemps asylum, withholding of removal, and relief under CAT. The Immigration Judge found that there was no nexus between Printemps's media statements and the actions taken against him by the officers of the National Palace and that the attack on Printemps did not rise to the level of persecution. On appeal, the BIA adopted and affirmed the decision of the Immigration Judge.

## II. STANDARD OF REVIEW

We review only the decision of the BIA, except to the extent that it expressly adopts the opinion of the Immigration Judge. See Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). Insofar as the BIA adopts the reasoning of the

4

Immigration Judge, we also review that decision. See Prado-Gonzalez v. INS, 75 F.3d 631, 632 (11th Cir. 1996). We review factual determinations of the BIA under the substantial evidence test. Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1230 (11th Cir. 2005). We must affirm the decision of the BIA if it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." Id. "Under this highly deferential standard of review, the [BIA]'s decision can be reversed only if the evidence 'compels' a reasonable fact finder to find otherwise." Id. (citation omitted).

## III. DISCUSSION

Printemps makes two main arguments on appeal. First, Printemps argues that the Immigration Judge erred in finding that he was removable under section 1182(a)(6)(C)(i) for attempting to enter the United States using a fraudulent visa and passport. Second, Printemps argues that the Immigration Judge and BIA erred in denying asylum because Printemps established that he suffered past persecution and had a well-founded fear of future persecution. We address each argument in turn.

Printemps argues that, because he admitted to the first immigration official he met in Miami that the passport and visa he produced were not in his real name, the Immigration Judge erroneously found that Printemps was inadmissible under

5

section 1182(a)(6) for attempting to enter the United States using fraudulent documents. We need not address this argument. Because the Immigration Judge also found that Printemps was inadmissible under section 1182(a)(7) as an alien not in possession of a valid unexpired visa at the time of his application for admission, any error committed by the Immigration Judge in finding Printemps inadmissible under section 1182(a)(6) is harmless.

Printemps also argues that the Immigration Judge erred when he found that Printemps had not been persecuted, at least in part, based on his actual or imputed political opinion. Printemps argues that when he questioned the government in his second media appearance he expressed a political opinion. Printemps's arguments fail.

Even if we were to assume that Printemps's statement to the media constituted the expression of a political opinion, substantial evidence supports the decision of the Immigration Judge that Printemps did not suffer past persecution on account of that political opinion. "[P]ersecution is an extreme concept, requiring more than few isolated incidents of verbal harassment or intimidation." Sepulveda, 401 F.3d at 1231 (quotation omitted). "[M]ere harassment does not amount to persecution." Id. Printemps alleged that on one occasion he was stopped at a road block, hit in the face, and threatened by officers of the National Palace, who

accused Printemps of causing trouble for them.  This incident does not rise to the level of persecution.  Neither does the alleged accusation by the National Palace officers compel the conclusion that the harassment of Printemps was on account of his political opinion.

Substantial evidence also supports the decision of the Immigration Judge that Printemps did not establish that he had a well-founded fear of persecution if he returned to Haiti. The Immigration Judge found that there was no evidence that the authorities in Haiti were looking for Printemps, there was no evidence that Printemps could not avail himself of the protection of the interim government that took power in March 2004, and there was no evidence that Printemps could not relocate to another part of Haiti.  Although Printemps argues that it is widely recognized in Haiti that the police are brutal and corrupt, Printemps did not present "specific, detailed facts showing a good reason to fear that [he] will be singled out for persecution" on account of his political opinion.  Id. (quotation omitted).

Printemps's claims for withholding of removal and relief under CAT also fail.  Because Printemps did not "meet the 'well-founded fear' standard for asylum, it is a fortiori that he cannot meet the withholding of removal standard." D-Muhumed v. U.S. Att'y Gen., 388 F.3d 814, 819 (11th Cir. 2004) (citations

7

omitted).  Likewise, Printemps did not establish that it was "more likely than not" that he would be tortured if he were returned to Haiti.

**PETITION DENIED.**