[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 02, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-15319
Non-Argument Calendar

_____

Agency No. A79-468-624

FELIPE ANDRES SANTOS,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(May 2, 2007)

Before BIRCH, BARKETT and KRAVITCH, Circuit Judges.

PER CURIAM:

Felipe Andres Santos, a native and citizen of Colombia, petitions this court

for review of the decision by the Board of Immigration Appeals ("BIA") affirming the Immigration Judge's ("IJ") order finding him removable and denying his application for asylum and withholding of removal under the Immigration and Nationality Act ("INA") and for relief under the United Nations Convention Against Torture ("CAT").[1]  For the reasons that follow, we affirm.

## I.  Background

Santos entered the United States in November 2000 on a non-immigrant visa and remained beyond the visa's expiration period.  Santos applied for asylum, withholding of removal, and relief under the CAT, alleging that he had suffered persecution from paramilitary groups based on his political opinion and his membership in a particular social group—journalists—after he and his father denounced such groups via their television productions.  He was served with a Notice to Appear, charging him with removability under INA § 237(a)(1)(B) and 8 U.S.C. § 1227(a)(1)(B).

At a hearing before an IJ, Santos testified in support of his application. According to Santos, he worked in Colombia as a cameraman and actor.  He was also partner in his father's television production company for which they produced

---

[1] Santos does not raise any arguments in his brief regarding the denial of CAT relief.  Thus, he has abandoned this issue on appeal.  See Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1228 n.2 (11th Cir. 2005).

television shows depicting human rights violations. Santos also claimed that he and his father did work for "the Office of the Ombudsman," a human rights organization.

In 1997, Santos filmed the testimony of persons alleging that they had witnessed the murders of several prosecutors by members of paramilitary groups. He claimed that after the filming, his family received threats from paramilitary groups, the Colombian army, and the police. According to Santos, the first "direct threat" was received by his father via a letter warning the family to separate themselves from both the television program and from the Office of the Ombudsman. Upon receiving this threat, Santos's father immediately resigned from the television program and fled to Panama where he remained for three weeks before returning to Colombia. Santos and his mother sought protection from the Colombian government and were provided bodyguards for approximately two years.

Santos further testified that in 1998 or 1999, the Colombian army opened fire on a suspected truck load of guerrilla rebels who turned out to be a family of civilians. Santos was sent as a cameraman by the Office of the Ombudsman to cover the incident, and he filmed an interview of a civilian survivor and members of the military. Santos stated that he distributed a recording of the interviews to all of the national television stations.

3

Santos traveled to New York on a tourist visa in October 1999.  According to Santos, returned to Colombia approximately five months later in order to stabilize his televison company, "fix the problems" in his marriage, and obtain a work visa so that he could return to the U.S. as an actor.  He asserted that he was not afraid to return to Colombia at this time because his parents had already relocated to the U.S. and his father was no longer receiving threats.  In November 2000, however, Santos claimed that two men approached him and threatened to exact "some vengeance against" him.  Although the men did not identify themselves, Santos believed them to be associated with the same people who had threatened his family in 1997.  Santos claimed that a few days later, a security guard at his apartment building alerted him to the presence of suspicious individuals waiting outside.  Once the guard alerted Santos, the men fled the premises.  Again, although the men did not identify themselves, Santos suspected that the men were of the same group who had previously threatened his family.

Santos testified that based on these incidents, if he were to return to Colombia, his life would be in constant danger from paramilitaries, the Colombian army, and/or the Colombian government.  He claimed, without explanation, that relocation within Colombia was not a viable option.  He also asserted that the police would not be willing to protect him despite the nearly two-years of protection he and his mother had previously received from the government.  In

4

addition, Santos admitted that his father had made several trips to Colombia between April 2000 and March 2002 without incident. Santos's father also testified that he had not experienced any difficulties during his trips to Colombia. But he did state that a government official had warned him in 2003 that his son, Santos, was one of a number of journalists targeted for vengeance.

Following the hearing, the IJ denied relief, finding that the threats received by Santos and his family did not amount to past persecution given that no one had been physically harmed. The IJ also concluded that Santos failed to demonstrate a well-founded fear of future persecution on account of a statutorily-protected ground, noting that there were no physical encounters and Santos had not been directly threatened with physical harm on account of an enumerated ground. The IJ also noted that Santos's allegations were vague, Santos had returned to Colombia *after* several of the alleged incidents had occurred, and Santos's father had returned to Colombia on numerous occasions without incident.

Santos appealed to the BIA, which agreed with the IJ's decision and dismissed the appeal. Noting that Santos had voluntarily returned to Colombia in 2000 and that his father had returned to Colombia several times after receiving the alleged threats, the BIA concluded that Santos had failed to establish either past persecution or a well-founded fear of future persecution. Santos now petitions this court for review.

5

## II. Discussion

Santos argues that the BIA and the IJ erred by concluding that he had not demonstrated a well-founded fear of future persecution on account of a statutorily-protected ground based on the "quantum and quality of the record evidence" establishing that, inter alia, he had received direct threats on two occasions in 2000; his family had received a specific threat in 1997; paramilitaries were aware of his journalistic beliefs in exposing their human rights violations; he could not relocate within Colombia because of his fame as an actor and a journalist and the country-wide operations of the paramilitary forces; and he was targeted by these paramilitary groups on account of his membership in a particular social group (that is, journalists who sought to "expose atrocities committed by paramilitary groups or the military"). He also argues that neither his re-entry into Colombia in 2000 nor his father's repeated trips to Colombia after 2000 reduced the reasonableness of his fear of future persecution.

We review the BIA's decision except to the extent that the BIA expressly adopts the IJ's decision. Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). To the extent that the BIA's or IJ's decision was based on a legal determination, this court reviews the decision de novo. Ruiz v. U.S. Att'y Gen., 440 F.3d 1247, 1254 (11th Cir. 2006). The IJ's factual determinations are reviewed under the substantial evidence test, and this court "must affirm the [IJ's]

6

decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." Al Najjar, 257 F.3d at 1283-84 (citation and internal quotation marks omitted). "Under the substantial evidence test, [we review] the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision." Ruiz, 440 F.3d at 1255 (citation omitted). Thus, "a finding of fact will be reversed only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Id. (citation omitted).

The Attorney General has discretion to grant asylum if an alien meets the INA's definition of a "refugee." INA § 208(b)(1), 8 U.S.C. § 1158(b)(1). The INA defines a refugee as

> any person who is outside any country of such person's nationality . . . and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of . . . membership in a particular social group, or political opinion.

8 U.S.C. § 1101(a)(42)(A) & (B). The asylum applicant bears the burden of proving refugee status. Al Najjar, 257 F.3d at 1284. To meet this burden, the applicant must establish, with specific and credible evidence, (1) past persecution

7

on account of a statutorily-listed factor, *or* (2) a "well-founded fear" that the statutorily-listed factor will cause future persecution. 8 C.F.R. § 208.13(a), (b); Al Najjar, 257 F.3d at 1287. "[P]ersecution is an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation, and that mere harassment does not amount to persecution." Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1231 (11th Cir. 2005) (citation and internal quotations omitted). Thus, "only in a rare case does the record compel the conclusion that an applicant for asylum has suffered past persecution or has a well-founded fear of future persecution." Silva v. U.S. Att'y Gen., 448 F.3d 1229, 1239 (11th Cir. 2006).

If the asylum applicant establishes past persecution, he is presumed to have a well-founded fear of future persecution unless the government can rebut the presumption. D-Muhumed v. U.S. Att'y Gen., 388 F.3d 814, 818 (citing 8 C.F.R. § 208.13(b)(1)(i), (ii)). If the applicant cannot show past persecution, then he must demonstrate a well-founded fear of future persecution on account of a statutorily-protected ground that is both subjectively genuine and objectively reasonable. Al Najjar, 257 F.3d at 1289. The subjective component can be established "by the applicant's credible testimony that he or she genuinely fears persecution." Ruiz, 440 F.3d at 1257. The objective component can be established by presenting "specific, detailed facts showing a good reason to fear that he or she will be singled out for persecution" on account of a statutorily-protected ground. Al Najjar, 257

F.3d at 1289.

Here, the IJ and the BIA concluded that Santos failed to establish past persecution. Because Santos does not challenge this conclusion on appeal, however, the issue of whether Santos suffered past persecution is not before us, and we do not consider it. See Sepulveda, 401 F.3d at 1228 n.2 ("When an appellant fails to offer argument on an issue, that issue is abandoned."). Thus, the only issue before us is whether the BIA erred on affirming the IJ's conclusion that Santos failed to establish a well-founded fear of future persecution.

Upon a review of the record, we conclude that the record does not compel the conclusion that there is a reasonable possibility that Santos personally will suffer persecution if he returns to Colombia. Even assuming Santos's fear of future persecution is subjectively genuine, there is substantial evidence to support the finding that it is not objectively reasonable given that Santos was never physically harmed; no one in his family was ever physically harmed; Santos had only two direct encounters with persons whom he *suspected* of being with the same individuals who had threatened his family in 1997; he returned to Colombia in 2000; and his father made several trips to Colombia from 2000 to 2002 without incident. Accordingly, the IJ and BIA did not err in finding that Santos failed to establish a well-founded fear of future persecution.

9

### III.  Conclusion

For the foregoing reasons, we **DENY** Santos's petition.