[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 6, 2007
THOMAS K. KAHN
CLERK

_____

No. 07-11123
Non-Argument Calendar

_____

BIA No. A97-637-408

MARYORI MARIN,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(November 6, 2007)**

Before BLACK, MARCUS and WILSON, Circuit Judges.

PER CURIAM:

Maryori Marin, a citizen of Venezuela, through counsel, seeks review of the

Board of Immigration Appeals's ("BIA") decision summarily affirming the Immigration Judge's ("IJ") order denying her application for asylum and withholding of removal under the Immigration and Nationality Act ("INA"), and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman and Degrading Treatment or Punishment ("CAT"). We dismiss Marin's petition as to her withholding of removal and CAT claims because she failed to exhaust her administrative remedies for those claims. We grant her petition as to her asylum claim, however, and remand to the BIA.

## I. BACKGROUND

In July 2003, the Department of Homeland Security ("DHS") admitted Marin to the United States in Miami as a non-immigrant B-2 visitor for a temporary period not to exceed January 19, 2004. On September 15, 2003, Marin applied to the DHS for asylum, withholding of removal, and protection under the CAT. On March 16, 2004, the DHS filed a Notice to Appear with the Miami Immigration Court, charging Marin with removability under 8 U.S.C. § 1227(a)(1)(B) because she remained in the United States for a longer time than permitted. On June 30, 2004, Marin appeared before the IJ with counsel, conceded removability and stated that she wished to seek asylum, withholding of removal, and protection under the CAT.

At her removal hearing on July 11, 2005, Marin testified in support of her

application. She testified that she worked as a chemical engineer for Venezuela petroleum from September 2001 to January 2003 and that she was an active member of the Petroleum Workers Union, UNAPETROL. Marin allegedly attended all of UNAPETROL's activities, including bi-monthly marches in demonstration against President Hugo Chavez's government, and served as a leader for some UNAPETROL activities.

While Marin described several instances of alleged persecution in her application, the most pertinent on appeal are the phone call and shooting of June 3, 2003. Marin claims that she received an anonymous call that morning from a man who said he knew her class schedule, when she came and left her home, and where her friends lived. The man purportedly threatened that Marin would "pay dearly" if she continued to protest against President Chavez. That evening, as Marin drove home from class, a car allegedly approached her vehicle and tried to force Marin to lose control thereof. Marin asserts that as she began to speed up, the men in the vehicle began to shoot at her car, destroying her windshield. As they drove away, Marin said, they made a hand signal identifying themselves as Chavez supporters.

After the presentation of evidence, the IJ issued an oral decision denying Marin's application for asylum. Specifically, the IJ noted that Marin did not provide evidence apart from her own testimony to support her claim that she was involved with UNAPETROL beyond mere membership. Furthermore, the IJ

3

indicated that to rule in Marin's favor, it would have needed some corroboration of her car-chase story, like a police report. According to the IJ, Marin's argument that she did not go to the police because the police supported Chavez did not suffice. Thus, the IJ found that Marin did not show past persecution or a well-founded fear of future persecution under the INA.

In her brief before the BIA, Marin challenged the IJ's conclusion that she had failed to show that she was specifically targeted on account of her political beliefs as contrary to the weight of the evidence. The BIA, however, affirmed the IJ's decision without an opinion.

On appeal from the BIA, Marin argues that the IJ erred because her oral testimony was sufficient to establish past persecution or a well-founded fear of future persecution based on her anti-Chavez opinions. In response, the Government argues that we (1) lack jurisdiction over Marin's asylum claims because she abandoned them, and (2) lack jurisdiction over her withholding of removal and CAT claims because she did not exhaust them below and abandoned them here. Furthermore, the government argues that even if we disagree on the abandonment issue, the record does not compel reversal of the IJ's decision. Marin did not file a reply brief.

## II. DISCUSSION

A. Jurisdiction

4

We review jurisdictional matters de novo. *Brooks v. Ashcroft*, 283 F.3d 1268, 1272 (11th Cir. 2002). "The exhaustion requirement applicable to immigration cases is found in 8 U.S.C. § 1252(d)(1), which provides that '[a] court may review a final order of removal only if . . . the alien has exhausted all administrative remedies available to the alien as of right.'" *Sundar v. I.N.S.*, 328 F.3d 1320, 1323 (11th Cir. 2003). Because we view that requirement as jurisdictional, we lack "jurisdiction to consider claims that have not been raised before the BIA." *Id.* In her brief before the BIA, Marin does not mention her claim under the CAT and only mentions withholding of removal in her concluding sentence. Thus, we agree with the government that we do not have jurisdiction to consider these claims.

We disagree, however, with the government's argument that Marin abandoned her asylum claim by inadequately raising it before us on appeal. "When an appellant fails to offer argument on an issue, that issue is abandoned," and passing references to an issue are insufficient to prevent abandonment. *Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1228 n.2 (11th Cir. 2005) (per curiam). The government argues that "Marin has not made any statement in her brief that might, even liberally, be construed as a coherent argument relating to the dispositive bases on which the Immigration Judge denied Marin's claim for asylum." (Red Brief at 26). Despite the absence of coherence and sophisticated

5

legal argument in her brief, however, Marin does explicitly challenge the IJ's

asylum determination. Because we read Marin's brief liberally, therefore, we

conclude that she has sufficiently raised her asylum claim before us, and we

address that claim here. *See Allstate Ins. Co. v. Swann*, 27 F.3d 1539, 1542 (11th

Cir. 1994) ("briefs should be read liberally to ascertain the issues raised on

appeal").

B, Asylum

Because the BIA summarily affirmed the IJ's decision, we review the IJ's

decision directly. *Sanchez-Jimenez v. U.S. Att'y Gen.*, 492 F.3d 1223, 1231 (11th

Cir. 2007). We review the IJ's factual determinations under the substantial

evidence test. *Id.* at 1230. Accordingly, we will "affirm the [IJ's] decision if it is

supported by reasonable, substantial, and probative evidence on the record

considered as a whole." *Id.* Furthermore, we may only reverse the IJ's fact

findings if we find that the record compels, not merely supports, reversal. *Id.*

*1. Credibility*

An alien bears the burden of proving eligibility for asylum. *Id.* at 1231. The

applicant's credible testimony "may be sufficient to sustain the applicant's burden

without corroboration." *D-Muhumed v. U.S. Att'y Gen.*, 388 F.3d 814, 818-19

(11th Cir. 2004) (citing 8 C.F.R. §§ 208.13(a), 208.16(b)). If an IJ wishes to make

an adverse credibility finding, he must do so explicitly, *Yang v. U.S. Att'y Gen.*,

6

418 F.3d 1198, 1201 (11th Cir. 2005), and if the IJ fails to do so, "the applicant or witness shall have a rebuttable presumption of credibility on appeal." 8 U.S.C. § 1158(b)(1)(B)(iii). Accordingly, because the IJ did not make an explicit determination that Marin's testimony was not credible, Marin's testimony has a rebuttable presumption of credibility on appeal.

### 2. *Marin's Claim*

In seeking asylum, Marin's burden was to "establish (1) past persecution on account of her political opinion or any other protected ground, or (2) a 'well-founded fear' that her political opinion or any other protected ground will cause future persecution." *Sepulveda*, 401 F.3d at 1230-31 (citing 8 C.F.R. § 208.13(a), (b)). "A showing of past persecution creates a presumption of a 'well-founded fear,' subject to rebuttal by the [government]." *Id.* at 1231; *see also Antipova v. U.S. Att'y Gen.*, 392 F.3d 1259, 1265-66 (11th Cir. 2004) (vacating and remanding to the BIA for a finding regarding past persecution and the applicability of a presumption of a future threat to applicant). We conclude that Marin sufficiently demonstrated past persecution on account of her political opinion to raise a presumption of well-founded fear.

Persecution is "an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation." *Sepulveda*, 401 F.3d at 1231. We recently determined that "intentionally being shot at in a moving car multiple

7

times" constitutes persecution. *Sanchez-Jimenez*, 492 F.3d at 1233. Thus, Marin's presumptively credible, unrebutted allegations concerning the attack she experienced while driving home from class on June 3, 2003 compels the conclusion that she suffered persecution.

The next question is whether the record compels the conclusion that the persecution Marin suffered was *on account of her political opinion*. The IJ found that Marin's UNAPETROL involvement, which allegedly included leadership activities, community presentations, signature collecting, meetings and marches, did not adequately demonstrate political opinion. We need not reach the question of whether Marin held the requisite political opinion, however, because we have recognized that an alien's imputed political opinion can satisfy the requirement that persecution be based on a protected ground. *Najjar v. Ashcroft*, 257 F.3d 1262, 1289 (11th Cir. 2001) ("An asylum applicant may prevail on a theory of imputed political opinion if he shows that the [p]ersecutor falsely attribute[d] an opinion to [him], and then persecute[d][him] because of that mistaken belief about [his] views.") (internal quotation marks omitted) (alterations in original). Accordingly, despite the IJ's finding that Marin did not sufficiently demonstrate political opinion, Marin could still have satisfied the requirement if her testimony established that the persecutors were motivated by what they perceived to be Marin's political opinion.

8

Marin's testimony concerning the threatening call and the attackers' hand gesture indicating allegiance to Chavez compels the conclusion that the persecution she suffered was on account of political opinion. Marin received the threatening phone call on the morning of the attack, and was told that she would "pay dearly" unless she stopped protesting against Chavez. The caller specifically told her that he knew her class schedule and the attack occurred as Marin was on her way home from class later that day. The attackers made hand gestures indicating their allegiance to Chavez as they drove away. The caller and attackers, therefore, clearly acted because of the political opinion they imputed to Marin. Accordingly, we conclude that the evidence Marin offered compels the finding that she suffered persecution on account of her political opinion.

At this point, the IJ should have shifted the burden to the government to rebut the presumption that Marin had a well-founded fear of future persecution.

## CONCLUSION

We dismiss Marin's petition as to the withholding of removal and CAT claims. We vacate the IJ's decision as to asylum, however, and remand to the BIA to give the government the opportunity to rebut the presumption that Marin had a well-founded fear of future persecution.

**PETITION GRANTED IN PART, DISMISSED IN PART, AND REMANDED.**