[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 10-15064
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCTOBER 19, 2011
JOHN LEY
CLERK

Agency No. A094-888-294



MIGUEL ANGEL MARIN,
YASMELI RUEDA MARIN,
a.k.a. Jasmely Rueda,

                                                              Petitioners,

versus

U.S. ATTORNEY GENERAL,

                                                              Respondent.


_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(October 19, 2011)

Before EDMONDSON, CARNES and KRAVITCH, Circuit Judges.

PER CURIAM:

Miguel Marin and his wife Yasmeli Marin seek review of the Board of Immigration Appeals' denial of their application for asylum, withholding of removal, and relief under the United Nations Convention Against Torture. The Marins contend that the BIA's adverse credibility determination was not supported by the record.

I.

The Marins, natives and citizens of Venezuela, entered the United States on March 27, 1998 with valid non-immigration visas. They remained in the United States after their visas expired on September 25, 1998. Almost 10 years later, on July 10, 2008, they filed an application for asylum, withholding of removal, and CAT relief based on political opinion and membership in a particular social group.

In their application Miguel stated that in 1989 he began working for the Judicial Technical Police in Venezuela investigating political corruption. He wrote that during his investigation he discovered that Hugo Chavez planned on assassinating then President Carlos Andres Perez in 1991 or 1992. When Chavez came to power Miguel realized that he was in danger, and upon advice of friends, he left the Judicial Technical Police in 1996. He went to work for a company dealing with the maintenance and sales of fire extinguishers. In 1997, while working for that company, he came to the United States to make purchases for that

company, and then went back to Venezuela. Then, in 1998, because he feared retribution from Chavez he decided to flee to the United States. He believed that if he went back to Venezuela he would be arrested because he was on a "list" of those people who were against Chavez.

During direct examination at the hearing in front of the Immigration Judge Miguel stated that he started receiving threats from the "bridge regime" in 1996 and that he continued receiving them through 1998. He said that he received them because he had belonged to the Judicial Technical Police, which he left in 1995. He also claimed that his car was stolen and burned in the end of 1997, which at first he thought was just a common crime, but he later received phone calls telling him that the same thing would happen to his family. Although he reported the stolen car to the police, he did not report the threats that went along with it because he thought the police department might be corrupt. After that incident he stopped receiving the threatening phone calls, but that event still caused him to decide to flee to the United States. And in 1998 he came to the United States.

On cross examination Miguel repeatedly said that his car was stolen and burned in 1995—two years before the 1997 date he gave during direct examination. And he again said that he left the Judicial Technical Police in 1995. When the government pointed out that he wrote in his application that he left it in

1996, Miguel said that he made a mistake. The government asked why Miguel did not include anything in his application about his car being stolen and burned, and he responded by saying that perhaps he should have included it. The government also asked Miguel if he had any proof that he had worked for the Judicial Technical Police, and he responded that all those documents were in his stolen car that was burned. When asked why he could not produce a single document supporting his testimony, Miguel said: "I couldn't get any. I knew that in 1998 he was coming into power and those who had raised in arms against him weren't going – able to have any documents."

The IJ denied the Marins' application. He found Miguel's testimony not to be credible, pointing to specific parts of his testimony that were internally inconsistent and that were inconsistent with their application. The Marins appealed the IJ's adverse credibility finding to the BIA.

The BIA also made an adverse credibility finding and dismissed the appeal. It agreed with the IJ's findings that Miguel was not credible and that he did not corroborate his claims, stating:

> The Immigration Judge found the respondent's testimony inconsistent as he gave different years for the incident in which his car was burned—he indicated on direct examination that it was at the end of 1997 but when cross-examined stated that it happened in 1995. The Immigration Judge found that this inconsistency went to the heart of the

4

respondent's claim as the burning of the car was the immediate cause of the respondent's departure from Venezuela. There was no explanation given as to this inconsistency. Finally, the Immigration Judge indicated that the respondent's demeanor was not that of a person who had been an undercover policeman as he was nervous and the evidence he gave was scanty, undetailed, unspecific, and highly speculative. We agree with the Immigration Judge . . . .

The Marins appealed the BIA's adverse credibility finding.

## II.

"Credibility determinations . . . are reviewed under the substantial evidence test," where this Court "must affirm the BIA's decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." D-Muhumed v. U.S. Att'y Gen., 388 F.3d 814, 818 (11th Cir. 2004) (quotation marks omitted). "[A] denial of asylum relief . . . can be supported solely by an adverse credibility determination, especially if the alien fails to produce corroborating evidence." Chen v. U.S. Att'y Gen., 463 F.3d 1228, 1231 (11th Cir. 2006). Under the REAL ID Act of 2005, credibility determinations can be based on "demeanor, candor, or responsiveness of the applicant or witness, the inherent plausibility of the applicant's or witness's account, the consistency between the applicant's or witness's written and oral statements . . . , the internal consistency of each such statement, the consistency of such statements with other evidence of record . . . and any inaccuracies or falsehoods in such statements . . .

5

." 8 U.S.C. § 1158(b)(1)(B)(iii). "If the [BIA] explicitly determines that the alien lacks credibility, [it] must offer specific, cogent reasons for the finding." Id. "The burden then shifts to the alien to show that [the BIA's] credibility decision was not supported by 'specific, cogent reasons' or was not based on substantial evidence." Id. (quoting Forgue v. U.S. Att'y Gen., 401 F.3d 1282, 1287 (11th Cir. 2005)).

Specific, cogent reasons supported the BIA's adverse credibility determination. As pointed out by the BIA, Miguel stated that the burning of his car was what finally led him to flee Venezuela for the United states. However, despite the importance of that event, he stated that it occurred in 1997, which would be shortly before he came to the United States, and he also stated that it occurred in 1995, which would be three years before he came to the United States. And despite the importance of that event Miguel did not put it in the application. And Miguel did not attempt to reconcile his inconsistent testimony at the hearing, or in front of the BIA, or in his brief to this Court. Further, he could not provide any corroborating evidence supporting his claims. The Marins did not meet their burden of showing that the record compelled reversal of the adverse credibility determination.

**PETITION DENIED.**