[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 11, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-12104
Non-Argument Calendar

_____

BIA Nos. A98-380-899 & A98-380-900

DALIA ROSA LUGO,
ANDREA CAROLINA SALCEDO,

                                                        Petitioners,

                          versus

U.S. ATTORNEY GENERAL,

                                                        Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(February 11, 2008)**

Before ANDERSON, BIRCH and WILSON, Circuit Judges.

PER CURIAM:

Dalia Rosa Lugo and her daughter, Andrea Carolina Salcedo,[1] pro se, petition for review of the final order of the Board of Immigration Appeals ("BIA") affirming without opinion the immigration judge's ("IJ") denial of their claims for asylum and withholding of removal under the Immigration and Nationality Act ("INA") and the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT").[2] Lugo contends that substantial evidence does not support the findings that she did not show that she suffered or reasonably feared persecution due to her political opinion. We DISMISS in part and DENY in part the petition.

## I. BACKGROUND

Lugo and her daughter are both natives and citizens of Venezuela. They entered the United States as tourists on 3 June 2003. In July 2004, the Department of Homeland Security ("DHS") served them with Notices to Appear ("NTAs"), charging them as removable pursuant to 8 U.S.C. § 1227 (a)(1)(B), as aliens who have remained in the United States for a time longer than permitted.

Lugo then filed an application for asylum and withholding of removal. In her application, Lugo stated that she had provided services as a volunteer to the

---

[1] Salcedo is a derivative applicant.

[2] Lugo failed to raise her claims related to CAT relief and presentation of witnesses before the BIA; therefore, we lack jurisdiction to review these claims, and they are dismissed. Amaya-Artunduaga v. U.S. Att'y Gen., 463 F.3d 1247, 1250 (11th Cir. 2006) (per curiam).

Orlando Venezuelan Society since 2002. Lugo claimed political asylum based on her political opinion and her membership in a particular social group. She alleged past mistreatment and fear of mistreatment if returned to Venezuela due to her political activities against President Chavez. Lugo stated that she had been assaulted by two men who took her purse, watch, and chain and warned her to stop opposing President Chavez. She explained that she feared imprisonment and torture if returned to Venezuela because, despite the warning, she had continued to collect signatures to recall President Chavez. Lugo stated that she had joined the opposition party Primera Justicia in December 2001. She attached an affidavit stating that, as a result of her participation in the recall referendum, she had been threatened, and that she fears persecution and loss of her life if she returns to Venezuela. Lugo also included the police report of the assault, verification of her membership in Primera Justicia and participation in the Venezuelan Society of Orlando, and articles describing conditions in Venezuela.

Lugo appeared before an immigration judge, conceded removability, and requested relief in the form of asylum, withholding of removal, and CAT protection. She supplemented her application by providing the State Department's Venezuela Country Report on Human Rights Practices for 2004, which essentially supported her description of life in Venezuela. The report described the history of the attempts to recall President Chavez from power. It noted that the government's

3

human rights record was poor.  The report stated that witnesses to governmental abuses and those who had signed petitions for the recall referendum were harassed and threatened.  The report also noted that the government and its supporters disrupted numerous opposition rallies and marches with military weapons, firearms, tear gas, and billy clubs.

Lugo's supplement also included:  (1) the police report she filed complaining of the 31 May 2003 assault, when her attackers warned her to stop opposing President Chavez; (2) her affidavit describing the assault and stating the she left Venezuela fearing for her life and that of her daughter; (3) several statements by people supporting her application and its allegations; and (4) numerous news clippings and articles on conditions in Venezuela and the characteristics of President Chavez's regime.

At her asylum hearing, Lugo testified to the following.  Her family and her daughter's father remain in Venezuela.  Although her family is from Espousuya, she had always lived in the area of Caracas and did not know about living in other areas.  The Venezuelan company she partly owns still operates and provides her with income.  Lugo joined Primero Justicia when President Chavez failed to maintain democracy in Venezuela.  As a result of President Chavez's undermining of democracy, some of her family's land was taken, but later returned.  Pro-Chavez groups, called "Bolivarian Circles," persecute President Chavez's opponents and

4

have no respect for Venezuelans. AR at 64.[3] In the United States, Lugo worked with the Orlando Society of Venezuelans because it facilitated the gathering of signatures to recall President Chavez in Orlando, Florida. Lugo offered a list, called a "Ta[s]kondez," that contained information about people that voted against President Chavez in the referendum, however, her name was not on that list. Id. at 70.

Lugo testified that she was attacked in Venezuela on 31 May 2003 at a subway station near the Savana Grande shopping district. While window shopping, she felt a poke in her right side and was pushed from the view of the window. Then, two armed men took her watch and bracelet and opened her purse to take her wallet. One of the men said, "Stop working against the Government of Comandante Chavez. This is a warning. The next time will be worse." Id. at 68. People came to her assistance, and the men fled. However, based on this comment, Lugo became scared because the assault was related to her political work. She filed a complaint with the municipality of Chapao and then "got on the first plane that [she] could" to come to the United States. Id. at 69. Because of this incident, she fears for her life and that of her daughter should they be returned to Venezuela.

On cross-examination, Lugo testified that the attackers' use of President Chavez's name made the mugging political. She conceded that her physical

---

[3]Lugo also submitted a report describing the Bolivarian Circles.

injuries were minor and did not require medical attention. Lugo explained that she collected recall signatures in February 2003, which were submitted to the government and made public before May 2003. However, before the attack, she had "never had any fear" of being in Venezuela. Id. at 80. Lugo also testified that at the time of the assault that Venezuela was caught up in the passion of the upcoming election and had low civility. Lugo conceded to the IJ that her attackers may not have known of her involvement in collecting the signatures to recall President Chavez.

The IJ denied Lugo's requests for relief. In his oral decision, the IJ found that Lugo was credible, but that the May attack was not enough to establish persecution. The IJ noted that Lugo's testimony lacked detail as to her activities in support of Primero Justicia and that she did not hold a high-level or high-profile position in the party. The IJ also noted that Lugo had left Venezuela, as she had previously, without hindrance and that her extensive family remained in Venezuela without significant political harassment. The IJ summarized the assault at the subway station in May, but emphasized that, standing alone, it did not amount to past persecution. The IJ found Lugo's belief that she would be persecuted for her political activities if she returned to be "highly speculative, at best." Id. at 40. Finally, the IJ noted that Lugo did not know what would happen if she were to return to a city other than Caracas in Venezuela. Because the IJ found Lugo to be

statutorily ineligible for relief, he chose not to address whether a discretionary grant of relief was warranted. Because Lugo had failed to establish eligibility for asylum, the IJ also found that she had failed to meet the higher burden required for withholding of removal. Further, the IJ found that Lugo's one instance of an assault in Venezuela did not qualify her for CAT relief, because she was not held under the custody of the government nor was it more likely than not that she would be in the future.

Lugo appealed the IJ's decision regarding political asylum and withholding of removal to the BIA. However, in her counseled brief, Lugo only challenged the IJ's denial of her application for political asylum. The BIA affirmed the IJ's decision without opinion. Lugo filed a timely petition for review.

## II. DISCUSSION

When considering a petition to review a BIA final order, we review legal issues de novo. D-Muhumed v. U.S. Att'y Gen., 388 F.3d 814, 817 (11th Cir. 2004). The BIA's factual findings are reviewed under the substantial evidence test. Al Najjar v. Ashcroft, 257 F.3d 1262, 1283 (11th Cir. 2001). Under this test, we "affirm the BIA's decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." Id. at 1284 (quotation omitted). We review only the BIA's decision except to the extent the BIA expressly adopts the IJ's opinion or reasoning. Id. at 1284. In this case, the BIA

7

expressly adopt the IJ's decision by affirming without opinion; therefore, we review the IJ's decision. Finally, we liberally construe pro se pleadings. Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998) (per curiam).

An alien, who is present in the United States, may apply for asylum. See 8 U.S.C. § 1158(a)(1). The Attorney General or Secretary of the Department of Homeland Security has discretion to grant asylum if the alien meets the INA's definition of a "refugee." See 8 U.S.C. § 1158(b)(1). A "refugee" is:

> any person who is outside any country of such person's nationality . . . who is unable or unwilling to return to, and is unable or unwilling to avail . . . herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of . . . political opinion . . . .

8 U.S.C. § 1101(a)(42)(A). The alien carries the burden of proving statutory "refugee" status. Al Najjar, 257 F.3d at 1284. "Uncorroborated but credible testimony from the applicant may be sufficient alone to sustain the burden of proof for asylum or withholding of removal." D-Muhumed, 388 F.3d at 818-19; see also 8 C.F.R. § 208.13(a).

"To establish asylum based on past persecution, the applicant must prove (1) that she was persecuted, and (2) that the persecution was on account of a protected ground." Silva v. U.S. Att'y. Gen., 448 F.3d 1229, 1236 (11th Cir. 2006). While the INA does not define persecution, we have held that "persecution is an extreme concept, requiring more than a few isolated incidents of verbal

8

harassment or intimidation." Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1231 (11th Cir. 2005) (per curiam) (quotations omitted).

A well-founded fear of future persecution may be established by showing: (1) past persecution (in that it creates a presumption that such fear is well-founded); (2) a reasonable possibility of future persecution that cannot be avoided by relocating within the subject country; or (3) a pattern or practice in the subject country of persecuting members of a statutorily defined group of which the alien is a part. 8 C.F.R. § 208.13(b)(1), (2); Sepulveda, 401 F.3d at 1230-31. The well-founded fear inquiry "has both an objective and subjective component" – that is, the applicant must show that her fear is "subjectively genuine and objectively reasonable." See Al Najjar, 257 F.3d at 1289. "The subjective component is generally satisfied by the applicant's credible testimony that he or she genuinely fears persecution." Id. "[T]he objective prong can be fulfilled either by establishing past persecution or that he or she has a 'good reason to fear future persecution.'" Id. (citation omitted). General civil strife does not create eligibility for relief from removal, even if the applicant's life is clearly threatened, unless the applicant proves the relationship between her fear of harm and a statutorily enumerated ground. See Perlera-Escobar v. Executive Office for Immigration, 894 F.2d 1292, 1296-97 (11th Cir. 1990) (per curiam). Moreover, when a petitioner's family remains in the country of origination without persecution, the petitioner's

9

fear of future persecution may be undermined.  See Ruiz v. U.S. Att'y Gen.,

440 F.3d 1247, 1259 (11th Cir. 2006) (per curiam).

The Attorney General may not remove an alien if that alien's life or freedom

would be threatened on account of political opinion.  INA § 241(b)(3),

8 U.S.C. § 1231(b)(3).  The applicant must show that it is "more likely than not

[that] she will be persecuted or tortured upon being returned to her country."

Sepulveda, 401 F.3d 1232 (quotation omitted).  "Where an applicant is unable to

meet the well-founded fear standard for asylum, [s]he is generally precluded from

qualifying for either asylum or withholding of [removal]."  Al Najjar, 257 F.3d at

1292-93 (quotation omitted).

The record does not compel a conclusion that the IJ erroneously found that

Lugo had not been subjected to past persecution.  As past persecution, Lugo cited

one incident of a mugging during which two men stole personal items and warned

her to stop opposing President Chavez.  She conceded to the IJ that the attackers

may not have known of her political activities.  Lugo's single incident does not

constitute the "more than a few, isolated incidents" of intimidation that might show

persecution, and is much less severe than the numerous incidents related in Silva –

phone calls, threats, gunshots, and a kidnaping without injury – which neither

compelled a conclusion that they were related to political opinion nor rose to the

level of persecution. See Silva, 448 F.3d at 1237-39. Accordingly, although frightening, Lugo's incident does not compel a finding of past persecution.

Likewise, the record does not compel a conclusion that the IJ erroneously found that Lugo did not objectively and reasonably fear future persecution. Lugo relied on the same mugging incident to provide the basis of her fear of future persecution. This single incident does not compel the conclusion the Lugo will be singled out for future persecution on account of her political opinion. See Silva, 448 F.3d at 1239. Additionally, her name did not appear on the list she submitted of President Chavez's opponents, so there is no evidence that she would be singled out for harassment or persecution in the future. Further, we see no error in the IJ's reasoning that Lugo's family's continued residence in Venezuela undermine the reasonableness of her fear of persecution upon her return. See Ruiz, 440 F.3d at 1259. Thus, although Lugo subjectively fears future persecution, the evidence does not compel a finding of an objective, reasonable possibility of future persecution.

Therefore, substantial evidence supports the determination that Lugo was not entitled to asylum because the evidence did not compel a finding of past-persecution or well-founded fear of future persecution on account of Lugo's political opinion. See Al Najjar, 257 F.3d at 1283-84. Because she did not meet

11

the burden required for asylum, Lugo was fails to meet the higher standard for withholding of removal. See id.

## III. CONCLUSION

Lugo, on behalf of herself and her daughter, petitions for review of the BIA's affirmance of the IJ's denial of their claims for asylum and withholding of removal. Because Lugo based her asylum application upon the single isolated incident, the record does not compel a conclusion that the IJ erroneously found that Lugo had not been subjected to past persecution and did not objectively and reasonably fear future persecution. Because she did not establish that she was qualified for asylum, Lugo was unable to meet the higher standard for withholding of removal. Accordingly, we **DENY** Lugo's petition as to those claims. Because we lack jurisdiction to review Lugo's claims related to CAT relief and presentation of witnesses, we **DISMISS** her petition as to those claims.

**DENIED IN PART, DISMISSED IN PART.**