[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 13-13235
Non-Argument Calendar

————————————————

Agency No. A079-582-295

JIBBIE JABBIE,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

————————————————

Petition for Review of a Decision of the
Board of Immigration Appeals

————————————————

(March 31, 2014)

Before TJOFLAT, WILSON and ANDERSON, Circuit Judges.

PER CURIAM:

Jibbie Jabbie, a native and citizen of Sierra Leone, petitions this court to

review the order of the Board of Immigration Appeals ("BIA") affirming the

Immigration Judge's ("IJ") denial of his application for asylum pursuant to the Immigration and Nationality Act ("INA") § 208(a), 8 U.S.C. § 1158(a), and withholding of removal under INA § 241(b)(3), 8 U.S.C. § 1231(b)(3).[1]  We deny his petition.

Jabbie was admitted to the United States, in New York City, on July 1, 2001. On September 1, 2001, Jabbie filed an I-589 application for asylum and withholding of removal on the ground that he had been persecuted on account of race, religion, and nationality by the Revolutionary United Front ("RUF") rebels in Sierra Leon, who had killed both of his parents and his fourteen-year-old sister.

After filing his I-589 application, Jabbie was twice interviewed by an asylum officer.[2]  The officer found Jabbie's testimony not credible in material respects—given the inconsistencies in what he stated in his I-589 application and in what he said to the officer during the interviews—and therefore concluded that

---

[1]  Jabbie also applied for protection under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT"), 8 C.F.R. § 208.16(c).  At the conclusion of the hearing on his application, the IJ denied relief, and the BIA, on appeal, affirmed.  In his petition for review, Jabbie challenges the BIA's CAT ruling. He has abandoned the challenge, however, by not providing argument on the ruling in his brief to this court.  *See Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1228 n.2 (11th Cir. 2005).  We therefore make no further mention of Jabbie's application for CAT relief in this opinion.

[2]  Jabbie was interviewed on July 14 and August 27, 2004.  Jabbie's interpreter during these interviews was an individual named Souleymane Camara, who was subsequently indicted and expected to plead guilty to more than 100 counts of conspiracy and asylum fraud for his role in a scheme to help West Africans stay in the United States.  A.R. at 540-543. The Government placed the judgment in his case in the record.  A.R. at 458. Neither the IJ nor the BIA relied on Jabbie's association with Soulaymane Camara in finding Jabbie's testimony not credible.  A.R. at 55 n.1.  Nor do we in disposing of Jabbie's petition for review.

Jabbie had failed to show that he was a refugee and thus eligible for asylum.  The asylum officer then referred Jabbie's case to Immigration Court, explaining, in his Assessment to Refer, why he concluded that Jabbie had not established eligibility for relief.

The IJ heard Jabbie's application on August 27, 2007, and again in August 20, 2010.[3]  At the conclusion of the August 20 hearing (the hearing relevant here), the IJ found Jabbie's testimony not credible—that his testimony was plainly inconsistent with what he stated in his I-589 application and then to the asylum officer in the asylum interviews—and for that reason denied his application and ordered his removal.  Jabbie appealed the IJ's decision to the BIA, and, on June 17, 2013, the BIA dismissed his appeal.

In his brief to this court, Jabbie argues that the BIA erred in relying on the IJ's adverse credibility determination in dismissing his appeal.  He also argues that the IJ erred in finding that he failed to establish that the RUF had persecuted him on a protected ground, that he failed to show a well-founded fear of future persecution, and that he failed to meet his burden of proof for withholding of removal.

Our review focuses on the IJ's credibility finding.  Since the BIA based its

---

[3] At the conclusion of the August 27, 2007, hearing, the IJ issued an oral decision in which he found Jabbie not credible and denied his application.  Jabbie appealed the decision to the BIA.  On May 12, 2008, the BIA returned the case to the IJ because the transcript of the August 27 hearing was incomplete and thus unreviewable.

3

decision to dismiss Jabbie's appeal on the IJ's credibility finding, we review the IJ's finding. *Id.* Where, as here, the BIA declines to address the IJ's alternative ground for his decision, the alternative ground is not before us for review; thus, we do not consider it. *See Martinez v. U.S. Att'y Gen.*, 446 F.3d 1219, 1220 n.2 (11th Cir. 2006).

We review a factual finding, including credibility determination, under the substantial evidence test. *Forgue v. U.S. Att'y Gen.*, 401 F.3d 1282, 1286 (11th Cir. 2005). Under that test, we must accept the finding if it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226,1230 (11th Cir. 2005) (quotation omitted). Moreover, the record evidence is viewed in the light most favorable to the Attorney General's (or the Secretary of Homeland Security's) decision and all inferences are drawn in favor of the finding at issue. *Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004) (*en banc*). Thus,"[t]o reverse a factual finding . . . [we] must find not only that the evidence supports a contrary conclusion, but that it compels one." *Farquharson v. U.S. Att'y Gen.*, 246 F.3d 1317, 1320 (11th Cir. 2001). That evidence in the record may also support a finding contrary to the Attorney General's is not enough to justify a reversal. *Id.*

The applicant carries the burden of showing eligibility for relief and must present evidence that is reliable, that is "credible." *Forgue*, 401 F.3d at 1287

4

(quotation omitted).  "Indications of reliable testimony include consistency on direct examination, consistency with the written application, and the absence of embellishments."  *Ruiz v. U.S. Att'y Gen.*, 440 F.3d 1247, 1255 (11th Cir. 2006).  Once the factfinder, here the IJ, has made an adverse credibility finding, the applicant, to obtain relief, bears the burden of showing that the finding was not supported by specific, cogent reasons or was not based on substantial evidence.  *Forgue*, 401 F.3d at 1287.

The Attorney General or Secretary of Homeland Security has discretion to grant asylum to an alien who meets the definition of a refugee.  INA § 208(b)(1)(A); 8 U.S.C. § 1158(b)(1)(A).  The INA defines a refugee as:

> any person who is outside of any country of such person's nationality . . . and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

INA § 101(a)(42)(A), 8 U.S.C. § 1101(a)(42)(A).  An asylum applicant must establish eligibility by "offering credible, direct, and specific evidence in the record."  *Forgue*, 401 F.3d at 1287.  To establish eligibility for asylum, an applicant may satisfy his burden of proof in either of two ways.  *Sepulveda*, 401 F.3d at 1230–31.  First, he may show that he was persecuted in the past in his home country on a protected ground, which gives rise to a rebuttable presumption of future persecution.  *Id.*  Second, he may meet his burden by establishing that he

5

has a well-founded fear, meaning the fear is subjectively genuine and objectively reasonable, that he will be persecuted in the future on account of a protected ground. *Id.* at 1231. "[A]n adverse credibility determination alone may be sufficient to support the denial of an asylum application" where there is no other evidence of persecution. *Forgue*, 401 F.3d at 1287. "If, however, the applicant produces other evidence of persecution, whatever form it may take, the IJ must consider that evidence, and it is not sufficient for the IJ to rely solely on an adverse credibility determination in those instances." *Id.*

An applicant is entitled to withholding of removal under the INA if he can show that, if removed, his life or freedom would be threatened on account of his race, religion, nationality, membership in a particular social group, or political opinion. INA § 241(b)(3)(A), 8 U.S.C. § 1231(b)(3)(A). The burden of proof for withholding of removal, however, is "more likely than not," and is thus "more stringent" than the standard for obtaining asylum relief. *Sepulveda,* 401 F.3d at 1232.

The IJ found that Jabbie's testimony was not credible and thus failed to establish his asylum claim.[4] Jabbie's argues that the finding was not supported by

---

[4] The IJ found in the alternative that Jabbie failed to meet his burden of showing past persecution or a well-founded fear of persecution on account of a protected ground. The BIA did not address these alternative grounds for denying relief. We therefore do not reach them. *See Martinez v. U. S. Atty Gen.*, 466 F.3d 1219,1220 n.2 (11th Cir. 2006); *Kazemzadeh v. U. S. Atty. Gen.*, 577 F.3d 1341,1350 (11th Cir. 2009) (reviewing the BIA decision as the final agency decision, and reviewing the IJ decision to the extent the BIA approved it.)

6

specific, cogent reasons.  We are not persuaded.  In light of the numerous and material inconsistencies in Jabbie's I-589 application, his interviews with the asylum officer, and his testimony before the IJ, the IJ was more than justified in refusing to accept his testimony as credible.

Critically, Jabbie's story differed as to whether his family members were killed during one RUF attack in September 1999 or during two separate RUF attacks, one in September 1999 and another January 2000.  Jabbie indicated in his I-589 application that his father was killed in September 1999 and that his mother and sister were killed in January 2000.  Then, in his first interview with the asylum officer, he testified that they were all killed during the September 1999 attack.  In his second interview with the officer, and later in his testimony before the IJ, he said that the deaths occurred during two separate attacks.

In reaching his adverse credibility finding, the IJ relied on other glaring inconsistencies that Jabbie was unable to explain.  For example, Jabbie indicated that he was imprisoned directly after the RUF's attack on his mother and sister in January 2000, and that the imprisonment lasted three months, until his release in April 2000.  This three-months' imprisonment could be so only if his mother and sister were killed in the January 2000 attack.  Otherwise, when he said that they

were killed (along with his father) during the September 1999 attack, the episodes become mutually exclusive. That is, as the IJ discussed, Jabbie, during the asylum interview, "was unable to resolve the internal inconsistency with his statements that (1) he was in captivity for three months and (2) he was in captivity from September of 1999 until April of 2000." A.R. at 54. The IJ properly found that his explanation that this was a "minor discrepancy" was unpersuasive. A.R. at 3-4, 26-27. *See also D-Muhumed v. U. S. Atty. Gen.* 388 F.3d 814, 819 (11th Cir. 2004) (discussing implausible testimony).

Jabbie also gave inconsistent testimony as to how and when he applied for, and received, his passport. Not only were these versions of the passport procurement completely different, but he was unable to offer a reasonable explanation for the discrepancy. During his July 14, 2004, interview with the asylum officer, Jabbie testified that he applied for and received the passport in Sierra Leone. But during the August 27, 2004, interview, he said he applied for the passport while in Sierra Leone, but did not receive it until after he had entered the United States. Confronted with the discrepancy, he told the officer that he was simply "nervous," which the officer found to be an unreasonable explanation. Moreover, during his hearing before the IJ, Jabbie testified that David (his father's friend) made "some document for" him and that it was a passport, but claimed that he never even saw the document. When confronted with his statement in the

8

interview that he had applied for and received his passport while he was still in Sierra Leone, Jabbie said that he had applied for it, but had not received it before his departure, and that David ultimately received his passport for him. When confronted with the fact that he had told the asylum officer that he had received it before leaving Sierra Leone, he simply said, "that's not my testimony," but did not try to explain the discrepancy. *Id.*

Jabbie's argument that the inconsistencies the IJ found do not go to the heart of his application is unavailing. Inconsistencies such as when Jabbie's family was killed and how long he was held captive go to the heart of his claim for asylum and withholding of removal. His argument that the discrepancies are minor and easily explained by the trauma of the attacks and his captivity is also unavailing.

In sum, we conclude that substantial evidence supports the IJ's adverse credibility finding and thus the BIA's dismissal of Jabbie's appeal. Given this conclusion, it follows that substantial evidence supports the denial of Jabbie's claims for asylum and withholding of removal.

PETITION DENIED.