[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 20-12783

_____

NKENG NJILEM JOHNSON,

Petitioner,

*versus*

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A203-593-893

_____

Before JORDAN, NEWSOM, Circuit Judges, and BURKE,* District Judge.

BURKE, District Judge:

Nkeng Johnson, a Cameroonian native and citizen, seeks review of an order by the Board of Immigration Appeals ("BIA") affirming an Immigration Judge's ("IJ's") decision. The IJ denied Johnson's application for asylum, withholding of removal, and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT").  After review of the record, and with the benefit of oral argument, we deny Johnson's petition.

I.    Background

Johnson entered the United States without valid immigration documents on June 4, 2019. Four days later, a Border Patrol officer interviewed him in English without an interpreter. Johnson signed a statement indicating that he understood the agent and that he had no questions about the interview.[1] Johnson was then referred for a credible fear interview with an asylum officer.[2]

---

*Honorable Liles C. Burke, United States District Judge for the Northern District of Alabama, sitting by designation.

[1] Johnson's native language is Cameroonian Pidgin English. He says he has a limited English proficiency.

[2] Asylum officers conduct credible fear interviews when a person seeking entry into the United States is subject to expedited removal and he or she

On August 1, 2019, the asylum officer tasked with interviewing Johnson wrote a memo regarding their meeting. In it, he explained that he didn't interview Johnson because Johnson answered his questions in Pidgin English and that no interpreter was available.

On August 6, 2019, the Department of Homeland Security served Johnson with a Notice to Appear, charging him with removability under 8 U.S.C. § 1182(a)(7)(A)(i)(I) for not possessing valid entry documents when applying for admission to the United States. Johnson then applied for asylum, withholding of removal, and CAT relief. He based his requests on his imputed political opinion and his membership in a particular social group (Anglophone Cameroonians).

Johnson claims he was twice arrested by the Cameroonian military. His first arrest occurred in September 2017 because he joined a protest over the Cameroonian government's mistreatment of Anglophone Cameroonians. His second arrest occurred

---

tells Customs and Border Protection that he or she wishes to apply for asylum, fears persecution or torture, or fears returning to his or her home country. While detained by Customs and Border Patrol, the asylum seeker receives information about the credible fear interview process. Ordinarily, an asylum-seeker waits 48 hours to participate in the interview, but he or she may waive that waiting period. *See* U.S. CITIZEN AND IMMIGRATION SERVICES, QUESTIONS AND ANSWERS, CREDIBLE FEAR SCREENING, https://www.uscis.gov/humanitarian/refugees-and-asylum/asylum/questions-and-answers-credible-fear-screening (last visited Dec. 29, 2021).

in October 2018 after Southern Cameroons National Council ("SCNC") members met at his bar; he maintains that he was falsely accused of being a member of this group. Johnson claims that he was beaten and detained for several days following both arrests.

On December 11, 2019, the IJ held a merits hearing on Johnson's applications. Ultimately, the IJ denied Johnson's applications. Explaining his reasoning, the IJ noted Johnson's demeanor at the hearing and his testimony—which was inconsistent with the record evidence. Those inconsistencies, the IJ concluded, made Johnson a non-credible witness. And given that adverse credibility determination and Johnson's failure to produce other evidence to support his claims, the IJ found denial appropriate. Johnson appealed to the BIA. The BIA affirmed—determining that the IJ's factual findings were supported by substantial evidence.

## II.    Legal Standards

We review the IJ's and the BIA's decisions in this case because the BIA agreed with much of the IJ's reasoning. *See Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341, 1350 (11th Cir. 2009) (explaining that we review the BIA's decision and, when the BIA agrees with the IJ's findings, we review the IJ's decision to the extent of that agreement). We review legal determinations *de novo*. *Id.* And we review fact determinations under the "highly deferential substantial evidence test" whereby we "must affirm the BIA's decision if it is 'supported by reasonable, substantial, and

probative evidence on the record considered as a whole.'" *Adefemi v. Ashcroft*, 386 F.3d 1022, 1026–27 (11th Cir. 2004) (en banc). Credibility determinations constitute fact findings that are reviewed under this deferential standard. *D-Muhumed v. U.S. Att'y Gen.*, 388 F.3d 814, 818 (11th Cir. 2004).

An applicant may obtain asylum if he is a "refugee." *Forgue v. U.S. Att'y Gen.*, 401 F.3d 1282, 1286–87 (11th Cir. 2005). To qualify as a refugee, he must be unable or unwilling to return to his country of nationality "because of persecution or a well-founded fear of persecution on account of" a protected ground. 8 U.S.C. § 1101(a)(42). These grounds include, among other things, political opinion and membership in a particular social group. *Id*. The asylum applicant bears the burden of proving statutory "refugee" status with specific and credible evidence. *Forgue*, 401 F.3d at 1286–87.

An adverse credibility determination alone "may be sufficient" to support the denial of relief. *Id*. at 1287. The IJ, however, must still consider all the evidence of persecution the asylum applicant produced. *Id*. If the applicant produces no evidence in addition to his testimony, the IJ may rely solely on an adverse credibility determination to deny the asylum application; if there is additional testimony, the adverse credibility determination will not alone be sufficient. *Id*. "The IJ must offer specific, cogent reasons for an adverse credibility finding." *Id*. (cleaned up). A credibility determination may not be overturned unless the record compels it. *Id*. And the applicant shoulders the burden of showing that an

adverse credibility finding wasn't supported by "specific, cogent reasons" or wasn't based on substantial evidence. *Id.*

III.    Discussion

The IJ and BIA gave "specific, cogent reasons" for finding Johnson non-credible. And those reasons are supported by substantial record evidence.

The IJ and BIA identified inconsistencies between Johnson's hearing testimony and his earlier sworn statement from the interview with Customs and Border Patrol and statements in a supporting affidavit from a Cameroonian human-rights lawyer. The first inconsistency concerned the time he spent in custody following his two arrests. At his hearing, Johnson testified that he was detained for two weeks in 2017 following his first arrest and one month in 2018 following his second arrest. However, during his interview with Customs and Border Patrol, Johnson stated that he was detained for one month in 2017 and five months and two weeks in 2018. The Cameroonian lawyer, on the other hand, attested that Johnson was held for ten and then seven days, respectively.

Johnson failed to adequately explain these inconsistencies. He contends that he couldn't understand the Customs and Border Patrol agent's questions, which were asked in English without a translator. His purported inability to understand the Border Patrol officer's questions is contradicted, however, by evidence that: (1) he told the Border Patrol officer that he understood English

and had no questions during their interaction; and (2) he answered each of the officer's questions intelligibility and coherently, including questions about the lengths of his detentions. [3]

Johnson also testified at his hearing that because the Border Patrol officer woke him early in the morning, he told the officer "anything" so he could quickly end the interview. The IJ noted that Johnson's own statement that he made up answers during that interview "affect[ed] his credibility one hundred percent."

Johnson's contention that the adverse credibility determination was based on discrepancies that aren't central to his asylum claim is meritless. First, we can't accept that the inconsistencies about the length of his detentions are less than central to his claim of past persecution. More important, however, the applicable statutory standard permits a trier of fact to base its credibility determination on "any inaccuracies or falsehoods . . . without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim." 8 U.S.C. § 1158(b)(1)(B)(iii). Even inconsistencies on relatively minor details may support an adverse credibility determination. See Xia v. U.S. Att'y Gen., 608 F.3d 1233, 1240–41 (11th Cir. 2010) (holding that "at least one internal inconsistency" regarding the applicant's age at the time of supposed persecution "and one omission" without evidence to

---

[3] Because substantial evidence supports the position that Johnson adequately understood the interview questions, we reject his assertion that the interview violated his due process rights.

clarify the discrepancies "provide[d] ample support" for an adverse credibility finding).

Johnson also contends that the IJ and the BIA failed to properly consider the country conditions report, which he contends corroborates his claim of past persecution. We disagree. The report describes incidents of government violence toward some Anglophone activists. But it says nothing about Johnson's personal circumstances, including details about his detention or mistreatment by police or whether he personally would face harm if he returned to Cameroon.

Given the inconsistencies in Johnson's testimony and the record, as well as the lack of other corroborating evidence for his claims, substantial evidence supports the BIA's denial of Johnson's asylum application. Further, because Johnson failed to establish his eligibility for asylum, he has also necessarily failed to meet the higher standards for withholding removal and CAT relief. *See Forgue*, 401 F.3d at 1287–88 & n.4.

**PETITION DENIED.**

20-12783                JORDAN, J., Concurring                1

JORDAN, Circuit Judge, concurring:

I agree with the panel opinion in full. I write separately to discuss the concerning issue of language interpretation in this case.

"The BIA deprives a petitioner of liberty without due process of law when it considers evidence that is not probative and whose admission is not fundamentally fair." *Indrawati v. U.S. Att'y Gen.*, 779 F.3d 1284, 1299 (11th Cir. 2015). Mr. Johnson made—but did not properly develop—an argument that his due process rights were violated because he was interviewed in English, a language that he did not understand. He neither discussed the standard nor showed, as our precedents require in order to establish a due process violation, that (1) he "was deprived of liberty without due process of law" and (2) "the purported errors caused [him] substantial prejudice." *Lapaix v. U.S. Att'y Gen.*, 605 F.3d 1138, 1143 (11th Cir. 2010). "To show substantial prejudice, an alien must demonstrate that, in the absence of the alleged violations, the outcome of the proceeding would have been different." *Id.*

Although Mr. Johnson did not make the requisite showing here, the record indicates that the government could, and should, have done more. Mr. Johnson understands a little English but mainly speaks Cameroonian Pigdin English, which is a separate language, despite its misleading name. *See* John Nkemngong Nkengasong, *A Grammar of Cameroonian Pidgin* 8–9 (2016) ("Cameroonian Pidgin [English] has a code of its own, a pattern of

word formation and sentence structure, and a phonetic system which are not similar to English" as well as a vocabulary "derived from a variety of sources, including . . . indigenous languages, English[,] and French."). Yet on June 9, 2019, a border patrol officer interviewed Mr. Johnson in English. Before asking Mr. Johnson any substantive questions, the officer made a statement in English to Mr. Johnson about the nature of the interview and asked Mr. Johnson if he understood. Mr. Johnson said that he did and then proceeded to answer the officer's questions. In contrast, though, two months later, an asylum officer filed a memo saying that Mr. Johnson "could not effectively communicate [in] English" because he spoke Cameroonian Pidgin English and only responded in that language. Because no Cameroonian Pidgin English translator was available, he did not interview Mr. Johnson.

On his I-589 application for asylum and withholding of removal, Mr. Johnson wrote that his native language was Bangwa, that he spoke Pidgin English fluently, and that he was not fluent in English. He requested and received a Pidgin English interpreter for the merits hearing. At that hearing and through the interpreter, Mr. Johnson explained to the IJ that although he generally did not understand English, he could understand some things. He also testified that he could not read English. Even with the interpreter, there were several moments of confusion due to translation issues during the hearing.

Much of this case turns on inconsistencies between statements Mr. Johnson made without an interpreter and statements

20-12783                JORDAN, J., Concurring                3

he made with an interpreter, but there is also the inconsistency between the border patrol officer who conducted an interview in English and the asylum officer who was unable to conduct an interview in English. Going forward, the government must ensure it interviews potential asylum applicants in a language that they actually speak and understand. To do any less would be both embarrassing and regrettable.